PAPPAS INDUSTRIAL PARKS, INC. *vs.* ATHENA PSARROS
& another.[1]

Suffolk. April 7, 1987. — August 7, 1987.

Present: BROWN, DREBEN, & KASS, JJ.

*Frauds, Statute of. Contract,* Sale of real estate, Performance and breach, What constitutes. *Estoppel. Consumer Protection Act,* Businessman's claim.

A general expression of intent contained in an oral promise to sell certain property which arose in a commercial setting involving, on both sides, persons experienced in real estate transactions did not constitute an enforceable contract, where significant details remained to be resolved by the parties, and where it was unclear whether the party to whom representations had been made had taken any material steps to his detriment before the other parties had withdrawn from the proposed transaction. [598-600]

One side's decision to break off incomplete and imperfect negotiations of a commercial agreement did not constitute an unfair or deceptive act under G. L. c. 93A. [600]

CIVIL ACTION commenced in the Superior Court Department on October 18, 1984.

The case was heard by *Walter E. Steele,* J., on a motion for summary judgment.

*Evan T. Lawson (Laura W. Morgan* with him) for the plaintiff.
*Joyce G. Perocchi* for the defendants.

KASS, J. For purposes of deciding the appeal, we must assume that Athena and John Psarros made an oral promise to sell to Pappas Industrial Parks, Inc. ("Pappas"), real estate at 57 Fargo Street, South Boston. Pappas argues that, the Statute of Frauds notwithstanding,[2] it is entitled to performance

---

[1] John Psarros.

[2] General Laws c. 259, § 1, which, in pertinent part, provides that no action shall be brought "[u]pon a contract for the sale of lands . . . [u]nless

because it reasonably relied to its detriment on the oral promise, and that the Psarroses are estopped to deny that promise. We conclude that the case is one of imperfect negotiations which did not give rise to an enforceable promise, and that judgment was rightly entered for the defendants, the Psarroses. A claim under G. L. c. 93A (counsel seem to regard the inclusion of such a claim in a complaint as almost obligatory) falls with the primary contract claim.

The case was disposed of in the Superior Court on a motion for summary judgment. That is why we take it as a fact in favor of the party resisting the motion that the Psarroses made an oral promise to sell the locus to Pappas, a fact which the pleadings otherwise place in dispute. The material undisputed facts developed in the pleadings, affidavits, and depositions are as follows:

Pappas owned land and buildings at Summer and D Streets in South Boston which it proposed to make over into office space. If Pappas could find a nearby location for parking, it would be possible to concentrate more office space on the primary site which Pappas already owned. The Psarros property was located to the rear of the Pappas site, at the southeasterly corner of Fargo and D Streets, and was suitable to the purpose. Negotiations ensued. In their earliest stages there was conversation about a sale for $500,000, but the transaction soon took the shape of a tax-free exchange of real estate. This required finding a site whose location and other attributes would enable the Psarroses to carry on the parcel delivery business which they conducted under the name, Olympic Delivery Services, Inc. ("Olympic").

No site which the Psarroses would accept in exchange for their land was ever agreed upon. Pappas, however, proceeded with its project on the basis of the underlying oral promise to sell. It designed, and claims to have commenced construction of, the project incorporating the Psarros site as the location

the . . . contract . . . upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith . . . ."

for required parking. Pappas permitted Olympic temporarily to occupy space in property Pappas owned at 647 Summer Street. Finally, Pappas terminated a lease with a tenant at still another property it owned, 370 West First Street, South Boston, to make available a location at which Olympic could carry on its business.

It is the purpose of the Statute of Frauds to suppress fraud, i.e., cooked up claims of agreement, sometimes fathered by wish, sometimes imagined in the light of subsequent events, and sometimes simply conjured up. See *Elias* v. *George Sahely & Co.*, 1983 App. Cas. (P.C.) 646, 655. Lest fraud be perpetrated, caution is in order when courts raise the bar of the ancient statute. Occasionally, however, there is a configuration of facts which greatly diminishes the risk of fraud and when, to the contrary, there is risk of inequity if effect is not given to an unwritten agreement. Such is the case if a "party seeking enforcement, in reasonable reliance on the contract and on the continuing assent of the party against whom enforcement is sought, has so changed his position that injustice can be avoided only by specific performance enforcement." Restatement (Second) of Contracts § 129 (1981). The principle was applied and discussed in *Hickey* v. *Green,* 14 Mass. App. Ct. 671, 673-674 & n.6 (1982).

Frequently, when the principle has been applied, there has been a pattern of conduct by one side which has dangled the other side on a string. So, for example, in *Cellucci* v. *Sun Oil Co.*, 2 Mass. App. Ct. 722, 725-728 (1974), *S.C.*, 368 Mass. 811 (1975), the plaintiff was repeatedly assured that a deal had been made — indeed, that he was bound by it — and only a bureaucratic formality was still to be attended to. In *Loranger Constr. Corp.* v. *E. F. Hausserman Co.*, 6 Mass. App. Ct. 152, 154-159, *S.C.*, 376 Mass. 757, 759-761 (1978), a supplier of moveable metal partitions left uncorrected for more than two months a price given to a contractor for purposes of enabling the latter to make a bid on a general contract. In *Greenstein* v. *Flatley*, 19 Mass. App. Ct. 351, 352-354 (1985), a landlord submitted a lease to a prospective tenant and then, through acts and representations, strung the tenant along for

more than four months before repudiating the lease which he had submitted.[3] For what may be the classic case of "stringing along," see *Hoffman* v. *Red Owl Stores, Inc.*, 26 Wis.2d 683 (1965).

An essential element in the cases adverted to was that the party to whom, through word or act, representations had been made reasonably relied on those representations. That is the element missing in the instant case. To the extent there was a deal, a central component was that there be a like-kind exchange of property. No like property was agreed to by the parties, or, for that matter, identified by even one of them. The proposed transaction was a commercial one involving, on both sides, persons experienced in real estate deals. The identification of land to be exchanged, the timing of the trade, whether there would be "boot" in the form of cash, whether there was to be a deposit, the time of closing — all those points were up in the air. A writing granting an option to Pappas to buy the Psarros property was conspicuously stamped "DRAFT" and remained conspicuously unsigned. As in *Tull* v. *Mister Donut Dev. Corp.*, 7 Mass. App. Ct. 626, 630-632 (1979), the circumstances were such that a reasonable businessman would be aware that the negotiations were inchoate and that no presumed agreement could be relied upon. See also *Mendel Kern, Inc.* v. *Workshop, Inc.*, 400 Mass. 277, 280-281 (1987). Particularly in the context of a complex commercial transaction, we have had occasion to caution against the transformation of general expressions of intent, when significant details remain to be resolved, into legally binding agreements. *Tull* v. *Mister Donut Dev. Corp.*, 7 Mass. App. Ct. at 632; *JRY Corp.* v. *LeRoux*, 18 Mass. App. Ct. 153, 172 (1984). See also *Lucey* v. *Hero Intl. Corp.*, 361 Mass. 569, 573-575 (1972), which speaks to the unenforceability of a contract when the location of property to be sold is left for future agreement.

---

[3] The plaintiffs in *Greenstein* v. *Flatley* did not attempt to enforce a contract, but only sought damages under G. L. c. 93A. The opinion, however, considers the facts as presenting an identifiable occasion for applying promissory estoppel.

Parenthetically, it is far from clear on the record that Pappas took material steps to his detriment before the Psarroses withdrew from the proposed transaction. There appear to have been alternative designs for the Pappas office building and simultaneous negotiations with other potential sellers of parking land. Olympic's occupancy of space in a Pappas building was arranged as a sublease with a tenant of Pappas and not with Pappas. Written termination of the lease at 370 West First Street occurred after the Psarros deal had fallen through. To the extent Pappas took steps in its office building project in anticipation that important parts of the transaction would fall in place, those were business risks which Pappas is obliged to shoulder.

There remains the c. 93A claim. Pappas may feel aggrieved that the Psarroses desisted from searching for an appropriate piece of real estate to swap. It is not, however, immoral, unethical, oppressive, or unscrupulous — and therefore not unfair or deceptive — to break off incomplete and imperfect negotiations of a commercial agreement. Every deal that goes sour does not give rise to a c. 93A claim. See *PMP Associates, Inc.* v. *Globe Newspaper Co.,* 366 Mass. 593, 596 (1975); *Levings* v. *Forbes & Wallace, Inc.,* 8 Mass. App. Ct. 498, 504 (1979). Compare *Greenstein* v. *Flatley,* 19 Mass. App. Ct. at 358.

*Judgment affirmed.*