Doerfer, J.
The plaintiff, LJA, Corporation d/b/a Joyce Chen (“LJA”), brought this action against the defendant, The Theatre District Limited Partnership (“TDLP”), seeking to enjoin TDLP’s eviction of LJA from certain premises located in CilyPlace, Boston, Massachusetts and for damages arising out of claims for breach of an alleged oral agreement, alleged unlawful billing practices by TDLP, deceit, and violation of G.L.c. 93A.[1] TDLP brought a counterclaim against LJA for monies due and owing pursuant to LJA’s former lease of the premises. On June 13, 1994, the court (Houston, J.) denied the plaintiffs application for a preliminary injunction. The defendant has now moved for partial summary judgment on the complaint and on the counterclaim as to the issue of liability.[2] For the reasons which follow, the defendant’s motion for partial summary judgment is allowed.
BACKGROUND
For the purposes of this motion, the following factual allegations are undisputed:
On June 26, 1987, TDLP and LJA entered into a twenty-year lease for certain premises in CityPlace, Boston, Massachusetts. LJA alleges that, during its term as tenant, TDLP imposed various administrative fees on LJA, which LJA believed to be unreasonable.
LJA first fell behind in its rental obligations to TDLP in 1990. Thereafter, TDLP, represented by defendant Paul Faraca (“Faraca”), and LJA, represented by Attorney Mark J. Witkin, engaged in several discussions and negotiations. Following these discussions, in May of 1990, TDLP and LJA entered into an Amendment to the lease (“the Amendment”), wherein the parties agreed on a schedule for payment of arrearage owed by LJA and TDLP agreed to decrease the amount of the administrative fees from 20% to 15%. In the Amendment, LJA certified and represented that it had no defense to its obligation to pay the sums due under *703 the lease. The Amendment provided in relevant part, that:
The lessee certifies that the lease is in full force and effect, the lessor is not in default in the performance, fulfillment or observation of any representation, warranty or agreement set forth in the lease, and the lessee has no defenses, offsets or counterclaims against its obligation to pay all sums due lessor under the lease.
(Ex. E to Aff. of Paul Faraca.)
In early 1991, LJA ran into financial difficulties and again fell behind in its rental obligations under the lease. Following notice of default under the lease, TDLP terminated the lease and thereafter commenced a summary process action in the Boston Municipal Court to recover possession of the premises. LJA entered into a settlement agreement of the summary process proceedings, which included an agreement for judgment (“the Agreement”).[3] The Agreement set forth the following terms and conditions: ■
a) LJA agreed and acknowledged that it was in arrears in its rent to TDLP at that time in the amount of $116,164.46;
b) LJA agreed that judgment and execution would enter in the Summary Process Action and an Agreement for Judgment was duly executed and filed with the court, pursuant to which an Execution was issued;
c) LJA agreed and acknowledged that the Lease had been validly terminated by TDLP and LJA had no right or claim to possession of the Premises as a tenant at sufferance or otherwise;
d) TDLP would allow LJA to use the Premises for a period of time so long as LJA paid a reduced amount of use and occupancy.
e) LJA certified that it had “no defenses, setoffs or counterclaims to the Summary Process Action or to its obligation to pay items of rental and other costs and fees incurred to date. To the extent any such defenses, setoffs or counterclaims ever existed, they are hereby waived and TDLP is released from any such claims,” and
f) LJA released TDLP and its partners, including Paul Faraca and William McQuillan, from all claims of every nature.
LJA alleges that in the spring of 1993, Faraca urged Mr. Stephen Chen (“Chen") to have LJA remodel the take-out area in order to expand the dining room and lounge areas of the restaurant. Chen told Faraca that the money used for remodeling would be money that could not be used to pay back due amounts to TDLP, because LJA did not have money for both. In response, Faraca allegedly told Chen that LJA should go ahead and do the remodeling and that, if this were done, TDLP would enter into a new lease with LJA that would provide a payout schedule for past due amounts. During 1993, LJA spent approximately $70,000 to remodel and improve the premises. Faraca allegedly knew that LJA was proceeding with the remodeling, as he visited the job site regularly.
TDLP alleges that it continually demanded satisfaction of the rental arrearage. On November 1, 1993, Faraca stated in a letter to Chen that:
The condition of my meeting is your agreement on some number for the past due balance. I need your written acknowledgement to a number. As to repayment terms, I am willing to listen to a proposal, but I’m not willing to discuss a new lease with a large unpaid balance. This should not be shocking to you; it has been our response for quite some time.
(Ex. DD to Aff. of Paul Faraca, emphasis in original).
In late 1993 and early 1994, Faraca and his partner, William McQuillan (“McQuillan”), demanded that back due amounts be paid and stated that they would not discuss a new lease as long as there was a large unpaid balance. At a meeting on January 14, 1994, Faraca and McQuillan demanded that LJA pay the back due amount and provide them with a letter of credit for approximately $170,000 in exchange for a three-year lease. LJA did not pay the back amounts owed under its rental obligations. By notice dated April 29, 1994, TDLP notified LJA that it was to vacate the premises.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
I. Count I (Breach of Contract)
LJA contends that TDLP breached an oral agreement with LJA to enter into a new lease for the premises. Although there is no written contract, and therefore such a claim would be barred by the Statute of Frauds, LJA asserts that it is entitled to relief under the estoppel exception to the Statute of Frauds. The “essential factors giving rise to an estoppel are:
(1) A representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made. (2) An act or omission resulting from the representation, whether actual or by conduct by the person to whom the representation is made. (3) Detriment to such person as a consequence of the act or omission.
Cellucciv. SunOilCo., 2Mass.App.Ct. Ill, 728 (1974).
*704 In Pappas Industrial Parks, Inc. v. Psarros, 24 Mass.App.Ct. 596 (1987), the Appeals Court discussed the enforceability of an oral promise given during real estate negotiations. In Psarros, the defendant had orally agreed to sell certain property adjacent to plaintiffs commercial office building to the plaintiff. Id. at 596. In reliance on the defendant’s oral promise, the plaintiff designed an expansion of its property and terminated a lease with another tenant. Id. at 597-98. The defendant reneged on its oral promise and the plaintiff brought an action to estop the defendant from denying that promise. Id. at 597. The Court affirmed the Superior Court’s entry of summary judgment for the defendant because the essential terms of any purported “deal” were left open, which indicated that a final agreement had not been reached. Id. at 599. Thus, the Court found that the plaintiff could not demonstrate that it had reasonably relied on the defendant’s oral promise for the purpose of establishing a claim of estoppel. Id. The Court noted that the purpose of the Statute of Frauds is to “suppress fraud, that is, cooked up claims of agreement, sometimes fathered by wish, sometimes imagined in the light of subsequent events, and sometimes simply conjured up.” Id. at 598.
In Madan v. Royal Indemnity Co., 26 Mass.App.Ct. 756 (1989), the Appeals Court held that a lessee could not enforce the oral promise of a prospective sub-lessee to lease office space, even though he had confirmed his oral promise by written letter. The Court found that, although the parties’ oral agreement contained all the material details of the lease, there were no assurances made to the plaintiff that a written lease was merely a formality. Id. at 764. Thus, prior to the execution of a formal, written lease, the defendant’s oral promise was not enforceable. Id. at 763-64.
In the present case, as the defendant contends, there is no evidence which suggests that the terms of the allegedly promised lease “could be ascertained with reasonable certainty” or that the execution of a written lease was “a mere formality.” In fact, correspondence between LJA and TDLP makes no mention of any such agreement and, rather, suggests the contrary. Faraca and TDLP consistently demanded payment of the rent arrearage from Chen. (Exs. G, P, T, W, Y, AA, CC, EE to Aff. of Paul Faraca.) Moreover, LJA and Chen had substantial experience in real estate matters and, thus, Chen’s reliance on Faraca’s alleged oral promise to lease the premises was not reasonable. Therefore, pursuant to Psarros and Madan, LJA’s estoppel claim fails as a matter of law.[4] Accordingly, the defendants are entitled to summary judgment on Count I of LJA’s complaint.[5]
II.Count II (Lease Charges Violate G.L.c. 93A)
LJA contends thatTDLP’s imposition of administrative charges throughout the term of the lease violated G.L.c. 93A. However, in both the 1990 Amendment to the lease[6] and the September 26, 1991 Settlement Agreement,[7] LJA released TDLP from any and all claims arising out of the lease agreement. LJA’s argument that any administrative charges imposed after September 26, 1991, are now actionable under G.L.c. 93A is without merit. As TDLP contends, such a limited interpretation of the scope of the releases would prohibit a party from ever releasing and waiving any rights pertaining to ongoing charges or activities.
Further, a G.L.c. 93A claim involving the administrative charges is barred by the four-year statute of limitations. See Rita v. Cordelia, 394 Mass. 822, 825 (1985). On May 3, 1990, TDLP wrote to LJA’s counsel with a proposed Amendment to the lease regarding the administrative charges. This complaint was filed on May 31, 1994. Although administrative charges may have been imposed after May 3, 1990, LJA clearly was aware of the administrative charges and had the opportunity to challenge their imposition by May 3, 1990. Accordingly, because LJA’s G.L.c. 93A claim with regard to the administrative charges is barred by the statute of limitations, TDLP is entitled to summary judgment on Count II of the complaint.
III.Counts III and IV (Deceit)
LJA contends that the actions of Faraca and TDLP, in orally promising to execute a new lease if Chen undertook remodeling, constitute deceit. In order to prevail on a claim of deceit, LJA must prove that it reasonably relied on any alleged misrepresentation by TDLP or Faraca. Saxon Theater Corp. of Boston v. Sage, 347 Mass. 662 (1964).
In Saxon Theater Corp. of Boston v. Sage, 347 Mass. 662 (1964), the Appeals Court held that the plaintiff could not reasonably rely on the defendant’s oral and written representations that it intended to lease certain premises to the plaintiff. The Court stated that “the plaintiff could not reasonably rely on a representation of an intention to draw up and execute a mutually acceptable lease when essential terms of it had not yet been stated or settled.” Id. at 667.
Similarly, in the present case, there is no evidence which suggests that Chen and Faraca settled on any essential terms of the allegedly promised lease. Rather, Chen avers that “Mr. Faraca told me that if the remodeling was done . . . , we would enter into a plan for a new lease with a payout schedule for the alleged back due amount which could be met by Joyce Chen.” (Aff. of Stephen Chen, ¶22.) Under Saxon Theater, supra, Chen could not reasonably rely on such a vague representation of intent. “The representation of intention to perform the agreement for a lease . .. does not provide a basis for an action in deceit.” Id. at 667. Accordingly, TDLP is entitled to summary judgment on Counts III and IV of the complaint.
IV.CountV (Violation of G.L.c. 93Aby Defendant Faraca)
LJA asserts that Faraca violated G.L.c. 93A by inducing LJA to invest $70,000 in TDLP’s property “by *705 dangling the promise of a new lease and workout agreement” and then refusing to enter into such an agreement. To prevail on a G.L.c. 93A, §11 claim, “(t]he objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce.” Levings v. Forbes & Wallace, Inc., 8 Mass.App.Ct. 498, 504 (1979). As stated in Pappas Industrial Parks, Inc. v. Psarros, supra, “it is not. . . immoral, unethical, oppressive, or unscrupulous — and therefore not unfair or deceptive — to break off incomplete and imperfect negotiations of a commercial agreement. Every deal that goes sour doees not give rise to a G.L.c. 93A claim.” Id. at 600, citing PMP Associates, Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975); Levings v. Forbes & Wallace, Iruc., 8 Mass.App.Ct. 498, 504 (1979).
Because the court has previously concluded that Faraca had not entered into a final, binding agreement to lease the premises to Chen, Faraca’s alleged oral statement that the parties would enter into a plan for a new lease if certain remodeling was done does not rise to the level of a G.L.c. 93A violation. Accordingly, TDLP is entitled to summary judgment on Count V of the complaint.
VII. Defendant’s Counterclaim (Breach of Contract)
LJA concedes that it owes some amount of back rent and related charges under the lease and the Amendment to TDLP. However, LJA contends that it is entitled to certain offsets based upon TDLP’s breach of their oral agreement (specifically, for the $70,000 it invested in remodeling) and based upon the unfair and deceptive nature of certain administrative charges. The court, however, has previously concluded that the alleged oral agreement is not actionable. The court has further concluded that, due to both the statute of limitations and to LJA’s execution of various releases, LJA may not now contest the imposition of administrative charges under the lease. Thus, LJA is not entitled to any offsets on the TDLP’s counterclaim for rent arrearage. The court concludes that TDLP is entitled to summary judgment on its counterclaim for breach of contract as to the issue of liability.
ORDER
For the foregoing reasons, the Defendants Paul Faraca, Individually, and Paul Faraca and William McQuillan, as general partners of The Theatre District Limited Partnership’s Motion for Summary Partial Judgment is ALLOWED as to the complaint and as to the issue of liability on their counterclaim. The matter shall be set down for an assessment of damages.

 Joyce Chen has agreed to dismiss count VI and Count VII of tíre complaint.

The issue of damages is left open for a subsequent assessment of damages hearing.

Both parties were represented by counsel during the negotiations.

The court also notes that the parties’ September 26, 1991 Agreement contained an integration clause which stated that “[t]his agreement shall not be extended, terminated or modified except pursuant to a writing duly executed by LJA and TDLP.” This clause further supports the court’s conclusion that Chen could not have reasonably relied on Faraca’s alleged oral promise to lease the premises to him.

In its reply brief, TDLP asserts that “UA appears to seek to attempt to plead a new claim, for the first time in Plaintiffs Opposition Memorandum, for quantum meruit.” (Reply Brief, p. 3.) To the extent that this is so, LJA’s claim is untimely and will not be considered by the court. Moreover, even if such claim were allowed, there is no evidence that LJA’s injection of $70,000 into the premises provided TDLP with any benefit.

The Amendment to the lease states, “the Lessee certifies that the lease is in full force and effect, the Lessor is not in default in the performance, fulfillment or observation of any representation, warranty or agreement set forth in the lease, and the Lessee has no defenses, offsets or counterclaims against its obligation to pay all sums due lessor under the lease.”

The Agreement provides: “LJA... hereby releases TDLP, its partners, including but not limited to Paul Faraca and William McQuillan, employees, agents, assigns and successors from all debts, demands, actions, causes of action, suits, accounts, covenants, contracts, agreements, damages, and any and all claims, demands and liabilities whatsoever of every name and nature, both in law and equity, against TDLP, its partners, employees, agents, assigns and successors which now it has or ever had from the beginning of the world to this date.”