Fecteau, J.
This is an action by which the plaintiffs seek to enforce an alleged contract for the re-transfer of real property and refund of the purchase price they paid due to the failure of a condition subsequent. Specifically, the plaintiffs contend that when they purchased a lot of unimproved, landlocked waterfront property from the defendant in 1990, the purchase was made with an oral agreement that if a road, then existing only on a neighboring approved subdivision plan, was not built by the time they paid off a 5-year note, the defendant would return the proceeds of sale and take back the property. The defendant denies that there was any such agreement, further contending that the plaintiffs are seeking specific performance of an oral real estate agreement contrary to the Statute of Frauds and that they are attempting to change the plain meaning of an unambiguous, written offer-to-purchase by parole evidence. Finally, the defendant contends that, even if there was such an enforceable contract, the plaintiffs have never attempted to obtain a building permit and that even if the road has not yet been built, the plaintiffs have access to a public road by an easement or right of way.
Trial of this case was conducted before me, sitting without jury, on January 4, 5, 11, 30, and February 5, 2001. Upon consideration of the credible evidence, I make the following findings of fact and rulings of law.
FINDINGS OF FACT
1. For some time prior to 1990, James and Catherine McNamara, husband and wife, then, as now, residing in Auburn, Massachusetts, wanted to build a new home on lakefront property. In late 1989 or early 1990, they saw and responded to an advertisement in the Worcester daily newspaper for property on Sargent’s Pond in Leicester, Massachusetts. The town of Leicester is contiguous to both Worcester and Auburn. The telephone number listed in the advertisement put them in touch with the defendant’s brother Robert Turturro, her real estate agent.
2. The plaintiffs made arrangements to meet the agent on the site with whom they viewed several lots. They were shown a subdivision plan, entitled “Tangle-wood Shores” which carried an endorsement “approval not required”; this plan showed a road, “Camelot Drive,” which then only existed on the plan, but on land not owned by the defendant. The ad referred to *84 frontage upon Paxton Street, and the only lots with such frontage were lots 5, 6 and 7.
3. The McNamaras were not interested in the lots along Paxton Street, expressing a desire to purchase a lot with a southerly exposure to the water. They first expressed interest in lot 2 but, upon being informed that it was unavailable, stated their interest in lot 3. Notwithstanding that the ad was limited to lots 5, 6 and 7, the defendant was willing to sell lot 3.
4. The plaintiffs observed that this lot, like lot 2, was landlocked, without any road that allowed ingress from Paxton Street, the closest public way. In addition, there were no utilities then serving this backland. They expressed their concern to the defendant’s agent, and later to the defendant, as they wanted to build a house and would have to be able to obtain a building permit; they knew that an actual road was likely to be a prerequisite. To the extent that Josephine Turturro testified that they did not inform her of their intent to build on the property but instead told her that they wanted to purchase the land for investment purposes, that testimony is discredited.
5. They were assured, first by the defendant’s agent Robert Turturro and later by the defendant, that the developers of an adjoining parcel of land that had received subdivision approval were planning to build a road soon and if a road was not built in five years, the seller would take back the property and refund their money. This representation was an essential element of their decision to make an offer on the property. The plaintiffs made a written offer to purchase lot 3, having an area of approximately 60,000 sq. ft., for $120.000.00.1 find that they would not have done so if their purpose in buying the property was solely for investment purposes. This price represents essentially full value for a “buildable lot.” Neither this written offer to purchase, nor any subsequent writing signed by the parties, referred to this “buy-back” agreement. They put a deposit of $12,000.00 on the offer and it was accepted by the defendant. A closing date was set for March 1, 1990, later changed to March 16, 1990.
6. The McNamaras then met with their attorney, Kevin Reynolds, of Auburn. He noted almost immediately the problem that a lack of access to a public way presented and expressed dissatisfaction with the oral assurances offered the McNamaras, telling them that such an agreement must be in writing. The lack of access caused the lending institutions consulted by the plaintiffs some problem, as the plaintiffs were unable to obtain conventional financing. The defendant agreed to an amendment of the terms of sale by agreeing to take back a mortgage for one half of the purchase price, payable over five years.
7. During the time prior to the closing, the McNamaras spoke with the defendant at least one time in person, at a meeting at a local restaurant; she assured them that the road was going to be built, likely within one to two years.
8. The closing was conducted on March 16, 1990. at the Worcester Registry of Deeds; present were the McNamaras, their attorney, the defendant’s attorney James Baird and the agent. Prior to this time no purchase and sale contract was signed but one was prepared for the closing by the seller’s attorney in which was contained, in an addendum, the 5-year, buy-back agreement. The plaintiffs signed it, but, since the seller was not present, Attorney Baird said that he would have to have his client sign it, followed by his sending a signed copy to the buyers. Additionally, a preliminary title examination report showed that the Turturro property was not contiguous to the planned road of the developers who were to be responsible for construction of the road as the northern end of lot 3 was 15’ shy of the road. This situation, as well as the “buy-back” agreement, was addressed in an addendum to the proposed purchase and sale agreement.
9. Notwithstanding that the purchase and sale agreement was not signed by the defendant, the plaintiffs accepted a representation that the purchase and sale agreement would be signed, accepted delivery and recording of the deed and delivered the consideration, $48,000.00 due in cash in addition to the $12,000.00 deposit already paid, and a promissory note, secured by a mortgage, for the remaining $60,000.00.
10. The deed of lot 3 to the McNamaras (Ex. 17), which refers to a plan of land of the defendant called Tanglewood Shores, dated August 10, 1989, and recorded in the Worcester District Registry of Deeds at Plan Book 630, Plan 28 (Ex. 2), sets Camelot Drive as its northerly bound. It appears from a reading of both the deed and the plan that lot 3 abutted this road.
11. Camelot Drive also appears on an approved subdivision plan of land called Camelot Shores Estates, owned by L.P.S. Trust and recorded in the Worcester District Registry of Deeds, at Plan Book 625, Plan 104, dated May 16, 1989. It received Planning Board approval on September 5, 1989. (Ex. 14.) A gap of land between the road as proposed and approved and the land of Turturro, including that which constituted lot 3, is clearly shown. The land which constitutes Camelot Shores Estates was conveyed by Louis Landon and Josephine Turturro, the defendant herein, to Louis Landon on September 28, 1988. (Ex. 13.) A plan of land was prepared immediately prior to this conveyance, recorded at Plan Book 607, Plan 71, and shows land of Landon and Turturro (Ex. 12). In this deed, the grantee, Landon, acknowledged an obligation to convejr to Turturro so much of the parcel as lies southerly of the roadway approved to be built, or, in other words, the strip of land between Turturro’s land, a part of which she conveyed to the McNamaras, and the road to be built, i.e., Camelot Drive. This *85 parcel was later conveyed by Landon on March 3, 1989, to himself. Richard Pentland and Ralph Sbrogna, individually, but who later established the L.P.S. Trust, which acquired the parcel in their names as trustees (Ex. 11). This deed into the L.P.S. Trust established an easement over land on which Camelot Drive was to be built, and for the benefit of lots that fronted thereon, presumably including land of Turturro.
12. On August 3, 1989, the trustees of the L.P.S. Trust conveyed to Turturro “utility extensions easements” over and along the proposed Camelot Drive (Ex. 24). These easements permitted Turturro, at her expense, to install utilities to serve land then owned by her abutting the land owned by L.P.S., as well as allow her and her successors to transverse Camelot Drive when built and approved. When she conveyed lot 3 to the McNamaras, Turturro knew or should have known that lot 3 did not abut Camelot Drive as proposed and approved prior thereto, nor was there a reference to the easements in the deed to the McNamaras.
13. In 1993, the parties communicated about one or possibly two checks having been written against insufficient funds as well as the possible purchase of another lot. The defendant told them that since they have been so patient about the road, since it had not yet been built, she would offer them a discounted price. The McNamaras response regarding their patience was to the effect that they had little choice. Incredibly, Turturro testified that she actually offered to exchange their lot for another lot with frontage on a public way.
14. They communicated again in mid- to late-1994, in which the McNamaras told her that since the 5-year note was maturing soon, they were interested in getting a payoff figure and, since the road was not built, to begin the process for her buy-back of the property. She became audibly agitated and said that she would have her attorney look into the problem. This was followed by the McNamaras causing their attorney to make a demand in writing to repurchase the property pursuant to their oral agreement. Turturro refused to buy the property from the plaintiffs and, through counsel, denied the existence of such an agreement. The McNamaras have held back the final payment on the mortgage, placing it in escrow with their present counsel.
15. The plaintiffs have never actually applied for a building permit. There is no water line or sewer line closer to lot 3 than Paxton Street, the closest public way. To this day, neither Camelot Drive nor any other road has been built on the adjoining property giving the plaintiffs access. The McNamaras do not own the 15’ strip of land between the northerly end of lot 3 and where the road was expected to be built. The building inspector for the Town of Leicester would likely not issue a building permit for this lot under the circumstances as they presently exist and likely would not until a road is built upon which lot 3 would have frontage. The evidence (Ex. 21, p. 3) raised the question (but not the answer) of whether the subdivision approval for Camelot Shores Estates has been rescinded by the Planning Board.
DISCUSSION
The plaintiffs seek enforcement of an oral promise to refund their purchase proceeds for an unimproved and landlocked parcel of land due to the failure of a condition that would have permitted them to obtain a building permit. The defendant contends that the plaintiffs have not proven that she had made such a promise, and, even if the promise has been satisfactorily shown, the Statute of Frauds bars enforcement on two grounds: that there is no writing signed by her for the repurchase of the real estate in question and that the purported contract could not be performed within a year. The plaintiffs, in turn, argue that the defendant should be estopped from asserting the Statute as a defense, since they relied on her promise to their detriment.
Turning first to the question of whether the defendant agreed to buy back the lot should the road not be built within 5 years of the McNamaras’ purchase, I find that she did agree, both directly by her and indirectly through her agent.
Second, determination must be made whether the Statute of Frauds applies in this matter. The Statute of Frauds, G.L.c. 259, §1, states, in pertinent part, as follows:
No action shall be brought: . . .
Fourth, Upon a contract for the sale of lands, tenements or hereditaments or of any interest in or concerning them; or,
Fifth, Upon an agreement that is not to be performed within one year from the making thereof;
Unless the promise, contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized.
Thus, since the agreement is for the sale of real estate, and since it was not intended to be performed until the passage of five years, it is clear that the statute does apply.[1]
Third, it is likewise clear that there is no writing signed by Turturro by which she bound herself to refund the purchase proceeds and buy back the property. In order for the plaintiffs to recover, then, the agreement must be one for which the defendant is estopped from setting the statute as a defense to enforcement.
“It is the purpose of the Statute of Frauds to suppress fraud, i.e., cooked up claims of agreement, sometimes fathered by wish, sometimes imagined in *86 the light of subsequent events, and sometimes simply conjured up . . . Lest fraud be perpetrated, caution is in order when courts raise the bar of the ancient statute. Occasionally, however, there is a configuration of facts which greatly diminishes the risk of fraud and when, to the contrary, there is a risk of inequity if effect is not given to an unwritten agreement. Such is the case if a ‘party seeking enforcement, in reasonable reliance on the contract and on the continuing assent of the party against whom enforcement is sought, has so changed his position that injustice can be avoided only by specific performance enforcement.’ Restatement (Second) of Contracts, §129 (1981).’’ Pappas Industrial Parks Inc., v. Psarros, 24 Mass.App.Ct. 596, 597 (1987).
The plaintiffs contend that Turturro’s promise of a refund and their detrimental reliance thereon acts as an estoppel that prevents her from asserting the Statute of Frauds as a bar to their claim. In order to establish such an estoppel, these essential factors must be shown: "(1) a representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made; (2) an act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made; (3) detriment to such person as a consequence of the act or omission.” Celucci v. Sun Oil Co., 2 Mass.App.Ct. 722, 728 (1974) [citations omitted].
The defendant contends that she made no such representation, nor with intent to induce the plaintiffs to act; I find she did so, however, having made the representation that the road would be built, but, in default thereof, she would return their money. She also claims that they have not relied upon the promise to their detriment and that the consideration paid by them should not be deemed to be sufficient reliance, claiming that they bought the lot on speculation and for investment purposes, the road not being an essential element of the bargain. The road was an essential element of the plaintiffs' purchase of this lot, for without it, they were unable to build a house on the property, which was their intent. The consideration that they paid demonstrates this as well as their detrimental reliance. Were it not for her promise of a refund, they likely would not have purchased the property. They were clearly looking to have a buildable lot at the end of five years. The fact that they have never actually applied for a building permit does not lessen their right to recover, since it would be a futile gesture. Nor does it make a material difference that there may be some path available to the McNamaras to cobble ingress and egress from the lot by way of recorded easements or rights-of-way. A finished road, and, by implication, with sewer and water tie-in availability, was promised, not an easement nor a right-of-way. A road has not been delivered. Even if adequate access for the McNamaras over another form of ingress and egress was satisfactorily proven, which it was not, it would not be the equivalent of a finished subdivision road.
The McNamaras acquired the land having been told by Turturro that she would refund their purchase if, at the end of the note pay-off period of five years, the road, by which they would gain access to a public way, was not built. They relied on that promise, and, in so doing, consummated the transaction and exchanged their money for the deed. The road has not been built. They do not have access to a public way. They relied on the representation to their detriment. They made a demand upon the defendant to abide by the contract to refund the proceeds. She has refused to do so. This constitutes a breach of contract. The plaintiffs have satisfied their burden to prove detrimental reliance. Their claim for a refund is not barred by the Statute of Frauds and they are entitled to a return of their consideration,[2] upon which they must execute a deed returning the property to the defendant. The defendant is further holding the original note and mortgage for $60,000.00. The plaintiffs are entitled to have the note returned to them forthwith and the mortgage discharged.
ORDER FOR JUDGMENT
For the foregoing reasons, judgment is to enter on behalf of the plaintiffs. The defendant shall pay the plaintiffs the amount of one hundred eighteen thousand six hundred and ninety-five dollars and forty-five cents ($118,695.45), together with interest and costs of action. In addition, the amount of $1304.55 currently being held in escrow is ordered released from escrow and delivered to the plaintiffs.
In addition, the defendant is ordered to deliver forthwith to the plaintiffs:
(1) the original promissory note dated March 16, 1990, to be endorsed by the defendant “paid in full,” and,
(2) to execute and deliver to the plaintiffs in a form appropriate for recording in the Registry of Deeds a discharge of the mortgage securing payment of said note that was recorded in Book 12680, at page 29, of the Worcester District Registry of Deeds.
Upon satisfaction of the judgment as ordered above, the plaintiffs are ordered to execute and deliver to the defendant a deed transferring to her the property in question free and clear of any encumbrances.

 There is, however, one scenario that permitted the contract condition to have been fully performed within a year: if the road was built within the year after closing. If so, the need for a refund would have been obviated and its enforceability extinguished. As this was not viewed by the parties as a realistic likelihood, it is discounted from this analysis.

 The plaintiffs have paid a principal amount of $120,000.00, less one payment that is being held in escrow by their attorney.