Merrick, EJ.
This is a G.L.c. 93A, §11 action between two real estate brokers for unfair and deceptive trade practices by the listing broker. The plaintiff has appealed the allowance of the defendant’s Mass. R. Civ. E, Rule 12(b) (6), motion to dismiss for failure to state a claim for which relief can be granted and Mass. R. Civ. R, Rule 12(c), motion for a judgment of dismissal on the pleadings. For purposes of Rule 12(b) (6) review, all facts pleaded by the nonmoving party are taken as true. Jarosz v. Palmer, 436 Mass. 526, 529-530 (2002).[3] PlaintiffThomas J. Saab, Jr., doing business as Tom Saab Associates (“Saab,” including his agents and employees), is a licensed Massachusetts real estate broker. Defendant Paul T Keenan, a principal of Keenan Real Estate, Ltd. (collectively “Keenan”), is also a licensed broker. In April of 2002 and for some time prior thereto, Keenan had a listing to sell a certain residential property in Salisbury, Massachusetts (the “property”) for one Tobacco (the “sefier”), who was living in Florida. Keenan listed the property with the Multiple Listing Service at a price of $349,900.00. The listing indicated that another broker who produced a buyer (i.e., a co-broker) would be paid two (2%) percent of the ultimate sale price as a commission. On April 10, 2002, Saab brought a couple named Dobson and Reed to view the real estate. Keenan was present. Later that day, Dob-son and Reed signed a written offer (a “Contract to Purchase” form) for $300,000.00. Saab called Keenan to inform him that the offer would be faxed to him. After asking the amount of the Dobson/Reed offer, Keenan stated that Saab need not bother faxing any offer less than $340,000.00. On April 13,2002, Dobson and Reed made a written offer to purchase at $342,000.00, contingent upon consummation of a pending sale of their home. Keenan never passed this offer on to the seller. Keenan replied to Saab that the offer price was acceptable, but that the contingency was not. On April 16, 2002, Dobson and Reed amended their written offer of $342,000.00 to delete the sale contingency. As the dates on the original offer form had by then expired, Saab sent another written offer of $342,000.00 without contingencies and with proper dates. None of those documents were ever brought to the seller’s attention.
At about the same time, there was another offer to purchase the property by a buyer brought in by Keenan. A sale to this Keenan buyer would have eliminated the need for a large portion of Keenan’s commission to be paid to a “co-broker.” The offer by this other buyer was communicated to the seller, who counter- *101 offered to sell at $345,000.00. This information was never given to Saab. At 6:45 P.M. on April 17, 2002, Keenan left Saab a voice mail message that the seller had accepted another offer, but would still accept a “back up” full price offer.
On the morning of April 18,2002, according to the seller, Keenan pressured the seller into accepting an offer of $343,000.00 from Keenan’s own buyer by stating that there were no other offers for the property.
On the same date, April 18,2002, Dobson and Reed made the full price “back up” offer in the amount of $349,000.00, which could be accepted if the other offer fell through. Keenan permitted Saab to fax this offer directly to the seller, the first offer from Dobson and Reed of which the seller had actually been informed. The seller was acquainted with Dobson’s family and later provided the information against Keenan to which Saab was not originally privy which is set forth in Saab’s complaint.
Keenan now argues that in allowing his motion to dismiss, the judge essentially ruled that (1) there was no relationship between Keenan and Saab sufficient to support a “free standing” action under G.L.c. 93A and (2) the behavior of Keenan alleged in the complaint did not rise to the level of the “unfair or deceptive” conduct proscribed by G.Lc. 93A, §2.
1. As to the relationship between Keenan and Saab, we note that privity of contract is not a requirement for an action under G.L.c. 93A. Nei v. Boston Survey Consultants, Inc., 388 Mass. 320, 324 (1983). Chapter 93A prohibits conduct that was not previously actionable under traditional theories of contract or tort.
Chapter 93A is ‘a statute of broad impact which creates new substantive rights and provides new procedural devices for the enforcement of those rights.’ The relief available under c. 93A is ‘sui generis.’ It is ‘neither wholly tortious nor wholly contractual in nature, and is not subject to the traditional limitations of preexisting causes of action.’ It ‘makfesj conduct unlawful which was not unlawful under the common law or any prior statute.’ Thus, a cause of action under c. 93A is ‘not dependent on traditional tort or contract law concepts for its definition’ (citations omitted).
Kattar v. Demoulas, 433 Mass. 1, 12-13 (2000).
A claim under G.Lc. 93A may be “freestanding” in the sense that it may be brought on its own and is not dependant on the existence of another more traditional claim or count in tort or contract See Ciardi v. F. Hoffmann-La Roche, Ltd., 436 Mass. 53 (2002). “In order for a c. 93A claim to remain viable, however, there must exist some ‘commercial relationship’ between the parties or the plaintiffs must demonstrate that the defendant’s actions interfered with ‘trade or commerce.’” Spencer v. Doyle, 50 Mass. App. Ct. 6, 12 (2000), quoting from First Enterprises, Ltd. v. Cooper, 425 Mass. 344, 347 (1997). The allegations of the complaint satisfy both of those alternatives. Keenan undertook to sell the property, offered in the Multiple listing Service to share his commission upon a sale to a party produced by a co-broker, showed the property to Saab and Dob-son and Reed, and received offers from Dobson and Reed procured by Saab which he never communicated to the seller. Keenan thus had a “commercial relationship” with Saab, albeit short of a contract, and Keenan’s action arguably interfered with “trade or commerce.” The plain language of the statute supports a conclusion that the relationship between the parties was such as to permit a G.Lc. 93A action.
Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property. ... as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two ... may... bring an action.
G.Lc. 93A, §11.
*102 Both Keenan and Saab are engaged in the conduct of trade or commerce and Saab claims to have suffered a loss of property by Keenan’s employment of an unfair or deceptive act or practice. No further relationship other than that alleged by Saab is required for him to maintain this action.
2. Keenan also argues that his duty was to the seller and not to Saab, and that the ultimate decision was the seller’s, not his. We are mindful that “[i]t is not... immoral, unethical, oppressive or unscrupulous — and therefore not unfair or deceptive — to break off incomplete and imperfect negotiations of a commercial agreement. Every deal that goes sour does not give rise to a c. 93A claim.” Madan v. Royal Indemnity Co., 26 Mass. App. Ct. 756, 764 (1989), quoting from Pappas Industrial Parks, Inc. v. Psarros, 24 Mass. App. Ct. 596, 600 (1987). Whether or not an act is “unfair” within the meaning of G.L.c. 93A depends upon “the nature of challenged conduct and on the purpose and effect of that conduct as the crucial factors....” Massachusetts Employers Ins. Exchange v. Propac-Mass, Inc., 420 Mass. 39, 42-43 (1995). The challenged conduct in this case was withholding offers from the seller and ¿forming him that there were no other offers. The alleged purpose and effect of that conduct was to steer the sale to a buyer produced by Keenan’s office so that Keenan could avoid splitting his commission, even on a potentially higher sale price.
Under the subject matter of “conflicts of interest,” Regulations of the Board of Registration of Real Estate Brokers and Salesmen provides:
(11) Conflicts of Interests: A broker or salesperson must act honestly and ethically and in the best interests of their client at all times.
(d) Conveying Offers. All offers submitted to brokers or salespeople to purchase or rent real property that they have a right to sell or rent shall be conveyed forthwith to the owner of such real property.
254 CMR 3.00(11) (d). The thrust of the complaint is that Keenan had a conflict of interest and violated his duty to convey all offers to the seller. Certainly the alleged conduct violates the quoted Regulation and Keenan’s duty to the seller. Keenan argues that the pending offer from Dobson and Reed was $1,000.00 less than the offer he recommended. Yet it is not at all unlikely that had the seller known of Dobson’s and Reed’s offer, he would have tried for a higher offer and, as we already know, would have succeeded. Prevention of the situation alleged here is precisely the point of the Regulation. The seller is in Florida and has made no claim against Keenan for his alleged failure to convey offers. The unfair acts or methods of competition alleged here, however, would operate to the detriment of both the industry and consumers.
In Ciardi v. F. Hoffmann-La Roche, Ltd., supra, the plaintiff brought an action against certain drug manufacturers alleging price fixing in violation of the Massachusetts anti-trust statute, G.L.c. 93, §§1-14A. Recovery under that statute is limited to businesses dealing directly with the manufacturer. As an ultimate consumer and indirect purchaser, the plaintiff was not allowed to bring an action under that statute and her claim under c. 93 was dismissed. The trial judge and, ultimately, the Supreme Judicial Court concluded, however, that the plaintiff was entitled to pursue her suit for the very same conduct under G.L.c. 93A, §9. Violation of a legal duty to one person may, in some circumstances, be an unfair or deceptive act injuring a third party and supporting an action under c. 93A.
Independent of any considerations of the likelihood of ultimate success on the merits, we conclude that the plaintiff is entitled to maintain this action.
The judgment of dismissal is vacated.
So ordered.

 The grounds for the defendant’s two motions are redundant. A motion under Rule 12(c) by a defendant is actually a motion under Rule 12(b) (6) for failure to state a claim. Jarosz v. Palmer, supra at 529.