NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-459

ANDREW C. STRANBERG

vs.

THE COOPERATIVE BANK.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Andrew Stranberg, appeals from a decision of a judge of the Superior Court granting summary judgment in favor of the defendant, The Cooperative Bank (bank). We affirm.

Background. On July 31, 2018, Stranberg, through an entity owned by him, entered into a purchase and sale agreement to buy a commercial building for $6.15 million with a closing date set for August 31. Various amendments to the agreement (through September 17) reduced the price to $5.95 million and extended the closing to October 3. Seeking financing for the purchase, Stranberg contacted the bank on September 12, and the following day spoke to two of its employees, Miguel Rosado and Nancy Reid.

The next day, September 14, Stranberg signed a loan term sheet prepared by the bank.  The term sheet cautioned, "[t]he actual terms and conditions under which the Bank would be willing to lend are subject to the completion of all due diligence required by the Bank including, but not limited to, credit approval, collateral evaluation, a review of all legal documentation, and any other criteria or conditions as determined by the Bank at its sole discretion."  The term sheet further cautioned "that this is not a commitment but strictly a proposal," that the loan "request will be reviewed and analyzed," and that "[i]f approved, the Bank will issue a formal commitment letter."

Due diligence began once Stranberg submitted his commercial loan application and personal financial statement on September 17 and continued with repeated communication with Stranberg through October 2.  On September 27, the bank completed an internal loan presentation report that raised serious questions about the loan.  After reviewing financial data, Rosado determined that the loan as presented would have "no chance" of approval by the bank's loan committee without changes being made, and he decided that he would not "sign off" on the proposal as a loan officer.  On September 28, Rosado contacted Stranberg and proposed new terms, and Stranberg agreed.

According to Stranberg, before and after September 28, Rosado, Reid, and a third bank employee repeatedly assured him that the bank would provide financing "as long as the appraisal and environmental report . . . were satisfactory." Stranberg signed a revised term sheet on October 1 containing the same cautionary language as the prior term sheet. That same day, the loan committee met and expressed concerns with the loan. On October 2, the bank decided to decline the loan, and Rosado informed Stranberg of the bank's decision.

After arranging alternative financing through investors, Stranberg ultimately purchased the property, but he incurred additional costs and lost a substantial ownership interest in the property. He filed a complaint for damages against the bank in the Superior Court and alleged equitable estoppel and unfair and deceptive conduct in violation of G. L. c. 93A. A judge entered summary judgment in favor of the bank.

Discussion. We apply de novo review to summary judgment to "determine whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law." Galenski v. Erving, 471 Mass. 305, 307 (2015).

1. Equitable estoppel. Stranberg contends that summary judgment should not have entered on his equitable estoppel claim

3

because he reasonably relied to his detriment on the bank employees' representations that the bank would provide financing if the appraisal and the environmental report were satisfactory. "An essential element under the promissory estoppel theory is that there be an unambiguous promise and that the party to whom the promise was made reasonably relied on the representation." Rhode Island Hosp. Trust Nat'l. Bank v. Varadian, 419 Mass. 841, 848 (1995). "[A]n action based on reliance is equivalent to a contract action, and the party bringing such an action must prove all the necessary elements of a contract other than consideration." Id. at 850. We conclude that the representations by the bank employees did not constitute an unambiguous promise, and Stranberg did not reasonably rely on those representations.

Assurances by bank employees that financing would be available "as long as the appraisal and environmental report . . . were satisfactory" did not amount to a promise in a contractual sense. These assurances were made while the bank and Stranberg continued to discuss the terms of this multimillion-dollar loan and before the bank had made its decision after completing due diligence. When these assurances were made at various (unspecified) times, Stranberg and the bank logically "contemplated a written agreement that would govern

4

the intricacies" of the loan.  Varadian, 419 Mass. at 850.

"Particularly in the context of a complex commercial

transaction, we have had occasion to caution against the

transformation of general expressions of intent, when

significant details remain to be resolved, into legally binding

agreements."  Pappas Indus. Parks, Inc. v. Psarros, 24 Mass.

App. Ct. 596, 599 (1987).  This is a case of "imperfect

negotiations which did not give rise to an enforceable promise."

Id.

We also discern no reasonable reliance by Stranberg for

several reasons.  First, the inchoate nature of the negotiations

between Stranberg and the bank rendered any reliance

unreasonable.  See Varadian, 419 Mass. at 850; Psarros, 24 Mass.

App. Ct. at 599.  This conclusion is buttressed by the fact that

Stranberg had substantial business experience.  See Varadian,

supra (in the absence of promise in "contractual sense" reliance

by "experienced businessmen" would be unreasonable); Psarros,

supra (without "presumed agreement" reliance by "businessman"

would be unreasonable).  Second, the term sheets expressly

cautioned against relying on any suggestion that the bank

promised to approve the loan and noted the following:  due

diligence would be required, the bank maintained discretion in

its review, the bank disclaimed any commitment to approve the

loan, the term sheet constituted a proposal, the loan request required further review and analysis, and a formal commitment letter would issue "[i]f approved."  Third, the bank's request for information beyond the appraisal and environmental review and the agreed-upon changes made to the term sheets indicates that loan approval was far from certain, and any reliance by Stranberg in the face of such uncertainty was unreasonable.

2.  <u>Unfair or deceptive acts or practices</u>.  General Laws c. 93A, § 2 (<u>a</u>), prohibits "[u]nfair or deceptive acts or practices."  When considering a c. 93A claim, "[a]lthough whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact . . . the boundaries of what may qualify for consideration as a c. 93A violation is a question of law" (citation omitted).  <u>Milliken & Co</u>. v. <u>Duro Textiles, LLC</u>, 451 Mass. 547, 563 (2008).  Stranberg bases his claim on the previously discussed representations of the bank employees as well as the bank's failure to disclose its internal decision-making process.  He contends that through this conduct, the bank "strung him along" in the loan process and caused him to forgo other financing opportunities.  We disagree.

While "stringing along" that induces detrimental reliance may, in some circumstances, constitute a c. 93A violation, see <u>Greenstein</u> v. <u>Flatley</u>, 19 Mass. App. Ct. 351, 356 (1985),

6

statements by bank employees here were made in the context of preliminary discussions, which the parties expected to be finalized, if at all, in loan documentation. There is nothing "immoral, unethical, oppressive, or unscrupulous -- and therefore not unfair or deceptive -- to break off incomplete and imperfect negotiations of a commercial agreement." Psarros, 24 Mass. App. Ct. at 600. See, e.g., Lambert v. Fleet Nat'l Bank, 449 Mass. 119, 127 (2007) (bank's statements that it would renew loan were "made in the context of preliminary negotiations" and were neither unfair nor deceptive). Also, as previously discussed, we discern no reasonable reliance, "an essential element" in cases involving stringing along prey, Psarros, 24 Mass. App. Ct. at 599, and Stranberg has not articulated how the bank -- in the business of lending money -- would have achieved a "more advantageous deal" by keeping him on a string but ultimately declining to loan him money. Flatley, 19 Mass. App. Ct. at 354. Finally, Stranberg points to no authority, and we are unaware of any, that requires a bank to disclose its internal decision-making process to a potential borrower in a commercial loan transaction. Contrary to Stranberg's contention, the record indicates that the bank actually disclosed an overall process for loan approval: due diligence included, but was not limited to, "credit approval, collateral

evaluation, a review of all legal documentation, and any other criteria or conditions as determined by the Bank at its sole discretion."  Following due diligence and the exercise of business judgment, the loan application followed this general process, but in the end did not appeal to the bank.  "Every deal that goes sour does not give rise to a c. 93A claim."  Psarros, 24 Mass. App. Ct. at 600.

Judgment affirmed.

By the Court (Meade, Hodgens & Toone, JJ.[1]),

Clerk

Entered:  June 27, 2025.

---

[1] The panelists are listed in order of seniority.