Madan v. Royal Indemnity Co.

ANIL MADAN vs. ROYAL INDEMNITY COMPANY.

No. 87-268.

Suffolk. January 13, 1988. — January 18, 1989.

Present: DREBEN, KASS, & SMITH, JJ.

*Practice, Civil,* Judgment notwithstanding verdict, Failure to make objection. *Consumer Protection Act,* Lease, Unfair act or practice. *Contract,* Lease of real estate. *Frauds, Statute of. Landlord and Tenant,* Execution of lease. *Abuse of Process.*

In an action against the lessee of certain office space by a prospective sublessee, an attorney, alleging that the defendant had committed a breach of an agreement to lease the premises to him and that the defendant had engaged in an "unfair or deceptive act or practice" in violation of G. L. c. 93A, §§ 2(a) and 11, the judge erred in denying the defendant's motion for a judgment notwithstanding the verdict where, although the evidence indicated that the parties had entered into an oral agreement to lease the premises, the plaintiff failed to produce sufficient evidence, in addition to the breach, to show any "unfair or deceptive acts or practices" by the defendant that amounted to a c. 93A violation. [759-764]

On a defendant's counterclaim for damages against the plaintiff in a civil action alleging the plaintiff's abuse of process by his unreasonably filing a notice of lis pendens and a request for specific performance in conjunction with his claim against the defendant, the judge properly entered judgment for the plaintiff where, regardless of whether the plaintiff's prayer for specific performance or his notice of lis pendens actually constituted "process," the defendant failed to show that it was damaged by the plaintiff's actions. [764]

On appeal from judgments arising out of an oral promise to lease certain real property, this court did not consider the plaintiff's claim that the judge erred when he ruled that the plaintiff had not presented a sufficient writing to satisfy the Statute of Frauds, where the plaintiff had failed to make objection at trial respecting the issue. [765]

CIVIL ACTION commenced in the Superior Court Department on June 26, 1981.

The case was tried before *Robert W. Banks,* J.

*Nathaniel M. Gorton* (*Michael K. Barron* with him) for the defendant.

*Jeffrey B. Storer* for the plaintiff.

SMITH, J. Anil Madan, the plaintiff, an attorney, filed a complaint in the Superior Court, claiming that the defendant, Royal Indemnity Company, had committed a breach of an agreement to lease certain premises to him.[1] He also claimed, among other things, that the defendant had engaged in an unfair or deceptive act or practice, in violation of G. L. c. 93A, §§ 2(*a*) and 11. The complaint sought specific performance and damages, both for the breaking of the agreement and for the alleged c. 93A violation. In its answer, the defendant denied that there was any agreement and also pleaded the Statute of Frauds. It also denied any violation of c. 93A. In addition, it filed a counterclaim for damages claiming that the plaintiff had unreasonably caused the filing of a notice of lis pendens on its property.

The plaintiff waived his claim for specific performance and the complaint, including the c. 93A action, was tried before a judge sitting with a jury.[2] At the close of the plaintiff's case, the defendant moved for a directed verdict on that part of the complaint alleging that it had committed a breach of an agreement to lease. The defendant claimed, among other things, that the plaintiff had failed to produce any writing sufficient to satisfy the Statute of Frauds. The judge agreed with the defendant that a sufficient writing had not been introduced in

---

[1] Rosann Madan, the plaintiff's wife, also an attorney, was included as a plaintiff in the complaint but she later waived any claim that she may have had against the defendant. She was also named as a defendant in a counterclaim. A judgment was entered in her favor on that counterclaim after the judge allowed her motion for directed verdict. There was judgment for the defendant on her claim against it. No issue has been raised on appeal as to these matters. The word "plaintiff" in this opinion refers only to Anil Madan.

[2] Neither party objected to the jury determining the c. 93A claim. Although there is no right to a jury trial under c. 93A (see *Nei* v. *Burley,* 388 Mass. 307, 315 [1983]), "[t]he rule does not suggest that a judge is prohibited from submitting such a case to the jury, or that it is reversible error if he does so." *Service Publications, Inc.* v. *Goverman,* 396 Mass. 567, 577-578 (1986). See also *Acushnet Federal Credit Union* v. *Roderick, ante* 604, 606 (1988).

evidence but denied the motion, ruling that the plaintiff had produced sufficient evidence for the jury to consider whether the defendant was estopped from claiming the Statute of Frauds as a defense.[3]

At the conclusion of the trial, the judge submitted special questions to the jury. Mass.R.Civ.P. 49(a), 365 Mass. 812 (1974). The questions were divided into three groups, reflecting the pleadings and evidence in the case: (1) the agreement to lease claim, (2) the unfair or deceptive acts claim, and (3) the counterclaim. In their response to the questions, the jury found that (1) the parties had made an agreement to lease office space but that the plaintiff had not "avoided" the defense of the Statute of Frauds, (2) the defendant had committed unfair or deceptive acts, but had not done so in a wilful or knowing manner, and (3) the plaintiff had unreasonably filed a notice of lis pendens but that the defendant had not suffered any damages. The jury awarded $300,000 to the plaintiff because of the violation of c. 93A by the defendant.

After the verdicts were entered the parties filed various motions. The judge denied the defendant's motions for judgment notwithstanding the verdicts and for a new trial. However, because of the jury's finding that the plaintiff had not avoided the Statute of Frauds, the judge ordered judgment to enter for the defendant on the claim that it committed a breach of an agreement to lease office space. The judge allowed the plaintiff's motion for entry of judgment notwithstanding the verdict as to the defendant's counterclaim but denied the plaintiff's motions (1) to reopen the evidence on the c. 93A claim to introduce the plaintiffs' demand letter, (2) for an additur to the actual damages, and (3) for judgment in his favor on his claim that the defendant's conduct was wilful and knowing. The judge awarded to the plaintiff $56,367.20 in attorney's

[3] In his charge, the judge instructed the jury that in order for the plaintiff to avoid the Statute of Frauds, he must prove that he acted or refrained from acting, to his detriment, in reasonable reliance upon some misrepresentation of the defendant and that the defendant had intended to induce such a course of action or nonaction on the part of the plaintiff. See *Cellucci* v. *Sun Oil Co.*, 2 Mass. App. Ct. 722, 732 (1974).

fees. On appeal, the defendant claims that the judge erred in (1) denying its posttrial motions, (2) granting judgment for the plaintiff on the defendant's counterclaim, and (3) awarding of attorney's fees in the amount of $56,367.20 pursuant to c. 93A, § 11. The plaintiff in a cross appeal, claims that the judge erred in denying his posttrial motions.

## I. *The Defendant's Issues.*

A. *Denial of the motion for judgment notwithstanding the verdict.* The defendant claims that the evidence did not warrant a finding that the defendant's conduct amounted to a violation of c.93A and, therefore, the judge erred in denying its motion for a judgment notwithstanding the verdict.

In reviewing the denial of a motion for judgment notwithstanding the verdict, the standard is "whether 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.'" *Poirier* v. *Plymouth*, 374 Mass. 206, 212 (1978), quoting from *Raunela* v. *Hertz Corp.*, 361 Mass. 341, 343 (1972). *O'Shaughnessy* v. *Besse*, 7 Mass. App. Ct. 727, 729 (1979).[4] "In applying this standard, we examine the evidence in the light most favorable to the plaintiff." *Forlano* v. *Hughes*, 393 Mass. 502, 504 (1984).

We summarize the evidence. In 1975, the plaintiff and his wife established a law practice in Boston. By 1980, the firm had grown and, consequently, the plaintiff started to look for more space. At that time the defendant had vacant space on the fifth floor at 25 New Chardon Street, space it had leased since 1966. The defendant hired one Boyle, a real estate broker, to find a subtenant and designated Brian Higgins, the administrative manager of its Boston office, to coordinate the effort to sublease the premises.

---

[4] As support for their respective positions on the denial of the motion for judgment notwithstanding the verdict, both parties refer in their briefs to various answers of the jury to the special questions. Such answers play no part in determining the correctness of the judge's ruling on the motion.

Boyle placed an advertisement in Massachusetts Lawyers Weekly that announced that "[a]pproximately 8,500 square feet of prime, useable space in a first-class building" was available for lease. The advertisement also stated that "[e]ight year lease available, $9.50 per sq. foot as is. Owner will improve to suit and factor improvements into rent over 8 year period . . . ."

The plaintiff saw the advertisement on July 14, 1980. On July 16, he and his wife met with Boyle and Higgins and visited the premises. Upon their inspection, it was obvious to them that substantial renovations were needed in order to make the space suitable for a law firm. The plaintiff asked Higgins if the defendant would pay for the renovation costs but Higgins refused and stated that the costs would be factored into the rent. The plaintiff and his wife left and stated that they would get back to Boyle if they were interested.

The plaintiff and his wife visited the property again on July 28. While there they went over the details of the defendant's offer with Boyle and Higgins. The details of the offer were as follows: the plaintiff would lease from the defendant between 7500 and 8000 square feet and the term would be to the end of the defendant's lease; the rent would be $9.50 per square foot (including utilities but with escalation for taxes); the defendant would pay for a space designer to be chosen by the plaintiff and amortize the design and construction costs over the eight-year period; and the boilerplate of the plaintiff's lease would be the same as that of the defendant's lease, which was a standard one.

Later the same day, Boyle telephoned the plaintiff to press him to take the space. The plaintiff told Boyle that, "We have a deal. I will take the space." Boyle asked for a letter which the plaintiff sent to Higgins. In the letter, the plaintiff wrote that the square foot rental price and the eight-year term were acceptable to him. He also acknowledged his understanding that the defendant would "amortize" the cost of the improvements to the premises over the eight-year term of the lease.[5]

---

[5] The letter from the plaintiff Higgins also included the following language:

After he wrote the letter, the plaintiff stopped looking for new quarters, and Boyle thereafter did not show the space to anyone else.

The plaintiff proceeded to engage one Bennett to design and prepare the construction documents for the renovations to the space. After he had prepared a preliminary plan he gave it to the plaintiff who, in turn, gave it to Higgins to forward to New York for the defendant's approval. Later Bennett produced a revised preliminary plan and Higgins informed him that the defendant had approved the plan and that Bennett should go ahead and prepare construction drawings.

On October 17, 1980, Boyle, at Higgins's request, telephoned the plaintiff and told him that the defendant wanted to know how much "up-front" money the plaintiff would pay toward the construction costs. The plaintiff stated that the payment of "up-front" money was not part of the agreement and refused to advance any money toward the costs of the improvements.

The preparation of the final construction plans and estimate were delayed because of lack of cooperation by the defendant's landlord. Frustrated, the plaintiff complained to Higgins and Boyle that no progress was being made and that his law firm was cramped in its quarters. On February 3, 1981, the plaintiff met with Higgins and Boyle and asked them if they were trying to "wreck" the deal. They both reassured him that they still had a deal and that they would take care of the landlord.

Bennett submitted the final architectural and engineering plans to Higgins who sent them to the defendant. The renovation project was then put out to bid. Shortly after a bid of $122,636 (not including carpeting) was received by the defendant, Boyle telephoned the plaintiff and again asked him how much money he would advance toward the construction costs. The plaintiff responded again that "up-front" money was not

"... In any event, we are ready to commence working out a formal lease and arrangements for space planning as your schedule permits.

"... Both Rosann and I enjoyed meeting with you and look forward to concluding a lease soon . . . ."

No written lease was ever prepared by the parties.

part of their agreement. Boyle then informed him that the defendant intended to charge interest on the construction cost reimbursements. The plaintiff protested that such interest charges also were not part of the agreement.

As a result of these developments, the plaintiff met with representatives of the defendant on April 30 to discuss the situation. He was informed by them that the defendant did not consider that the parties had an agreement but rather that the parties were still in the negotiating stage. The representatives then stated that the defendant would not pay more than $75,000 of the construction costs and that any of that amount paid by the defendant must be reimbursed by the plaintiff over the term of the lease with interest at the prime rate. The plaintiff responded that he believed that the parties had entered into an agreement to lease office space and that none of the defendant's new demands were part of that agreement. The meeting ended with nothing resolved. Letters were exchanged by the parties but their respective positions remained unchanged. Finally, all contact was broken off. After the April 30 meeting, the plaintiff started looking for other office premises to rent. He eventually found some space but at a considerably higher rent per square foot than the space offered by the defendant.

Viewed in the light most favorable to the plaintiff, the evidence shows that the parties had entered into an oral agreement to lease office space. At trial, and in his brief, the plaintiff identified the breaking of that agreement by the defendant as the "unfair or deceptive acts or practices" that constituted a violation of c. 93A, § 2(a), as amended by St. 1978, c. 459, § 2.[6] As the plaintiff concedes in his brief, however, the mere breach of a contract, without more, does not amount to a c. 93A violation. *Whitinsville Plaza, Inc.* v. *Kotseas*, 378 Mass. 85, 100-101 (1979). *Gopen* v. *American Supply Co.*, 10 Mass. App. Ct. 342, 348 (1980). That principle is especially true where, as here, the agreement is oral and pertains to an

---

[6] Although the c. 93A claim was a separate cause of action from the claim that the defendant committed a breach of an agreement and the jury were so instructed, the evidence to support both causes of action was the same.

interest in real estate. If a court held that a party could maintain a c. 93A action in regard to a simple breach of an oral agreement to sell or lease real estate, such a decision would be against the strong legislative policy forbidding actions from being brought upon oral contracts "for the sale of lands, tenements or hereditaments or of any interest in or concerning them . . . ." G. L. c. 259, § 1. Therefore, in order to show a violation of c. 93A, the plaintiff must show "unfair or deceptive acts or practices," other than the breach. Here, the plaintiff failed to identify any such conduct that would warrant a finding of a violation of c. 93A.[7]

The plaintiff argues that the defendant's demand for new terms after the parties had reached an oral agreement was conduct in violation of c. 93A and that the delay caused him to obtain office space at higher rent. "[A] plaintiff's conduct, his knowledge, and what he reasonably should have known may be factors in determining whether an act or practice is unfair." *Swanson* v. *Bankers Life Co.*, 389 Mass. 345, 349 (1983). Here, the plaintiff is an experienced and successful lawyer who, prior to entering into negotiations with Boyle and Higgins, was familiar with real estate law and well aware of the Statute of Frauds.[8] It can reasonably be inferred that because of his knowledge he understood that an oral agreement to lease office space was not enforceable because of the Statute of

---

[7] The judge ruled, and we agree, that the plaintiff and the defendant were both engaged "in the conduct of . . . trade or commerce" and therefore § 11 of c. 93A (as amended through St. 1979, c. 72, § 2) applied to the plaintiff's claim against the defendant. Therefore, any conduct of the defendant would be judged by a standard of unfairness higher than the standard employed where actions are brought by a consumer under § 9 of the statute. See *Spence* v. *Boston Edison Co.*, 390 Mass. 604, 616 (1983) ("One can easily imagine cases where an act might be unfair if practiced upon a commercial innocent yet would be common practice between two people engaged in business"). Also see *Levings* v. *Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498, 504 (1979) ("The objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce").

[8] The plaintiff is a graduate of Cornell University and Harvard Law School where he had taken courses in real estate law. He testified that he had the third highest mark in his bar examinations. He also had engaged in lease negotiations for office space in the past.

Frauds. Yet, there is no evidence that the plaintiff ever demanded a written lease from the defendant or that he received any assurances that a written lease was merely a formality. Contrast *Greenstein* v. *Flatley*, 19 Mass. App. Ct. 351, 354 (1985). Indeed, because of a lack of an enforceable agreement, this case bears some similarity to those cases that are concerned with c. 93A claims that arose from incomplete or imperfect negotiations. See *PMP Associates, Inc.* v. *Globe Newspaper Co.*, 366 Mass. 593, 596 (1975); *Tull* v. *Mister Donut Dev. Corp.*, 7 Mass. App. Ct. 626, 631-632 (1979); *Levings* v. *Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498, 504 (1979). In such instances, it has been held that "[i]t is not . . . immoral, unethical, oppressive or unscrupulous — and therefore not unfair or deceptive — to break off incomplete and imperfect negotiations of a commercial agreement. Every deal that goes sour does not give rise to a c. 93A claim." *Pappas Industrial Parks, Inc.*, v. *Psarros*, 24 Mass. App. Ct. 596, 600 (1987). In any event, in the circumstances present here, we do not perceive any "unfair or deceptive acts or practices" by the defendant that amounts to a c. 93A violation.

B. *The lis pendens claim.* The jury found on the defendant's counterclaim that the plaintiff had unreasonably filed a notice of lis pendens and a request for specific performance in conjunction with his claim against the defendant. The jury found also that the defendant was not damaged by the plaintiff's actions. The judge ordered judgment to enter for the plaintiff. There was no error.

The defendant characterized its action as one for abuse of process. We need not decide whether a prayer for specific performance or a notice of lis pendens constitutes "process" (but see *Jones* v. *Brockton Public Markets, Inc.*, 369 Mass. 387, 389-390 [1975]), because we hold, in any event, that judgment was properly entered since the defendant failed to show that it was damaged. Damage is an essential element of the tort of abuse of process. *Ledgehill Homes, Inc.* v. *Chaitman*, 348 Mass. 777 (1964).

## II. *The Plaintiff's Issues.*

A. *The Statute of Frauds issue.* The plaintiff claims that the judge erred when he ruled that the plaintiff had not presented a sufficient writing to satisfy the Statute of Frauds. That ruling came on the defendant's motion for a directed verdict. However, when the judge made his ruling that the plaintiff now contests, there was no objection. "The failure to object left nothing for our consideration." *Nolan* v. *Parker*, 15 Mass. App. Ct. 475, 480 (1983). Therefore, we do not address the issue.

B. *Other issues.* The plaintiff's other issues in his cross appeal are associated with his c. 93A claim. Because we hold that, as matter of law, that claim fails, we do not consider the other issues.

## III. *Conclusion.*

The judgment of October 2, 1986, is modified by deleting paragraphs 2 and 4 (concerning attorney's fees) and adding a paragraph that provides judgment for the defendant on the c. 93A claim. The balance of the judgment is affirmed and other judgments entered in the case are to stand.

*So ordered.*