FRAMINGHAM AUTO SALES, INC. *vs.* WORKERS' CREDIT
UNION.[1]

No. 95-P-525.

Middlesex. March 4, 1996. - October 3, 1996.

Present: ARMSTRONG, BROWN, & PORADA, JJ.

*Negotiable Instruments,* Cashier's check, Dishonor. *Consumer Protection
Act,* Bank, Unfair or deceptive act.

A credit union did not commit an unfair or deceptive act within the mean-
ing of G. L. c. 93A by refusing to honor a cashier's check it had issued,
where the breach of its legal obligation was not unethical, unscrupulous
or oppressive and where the credit union had no ulterior motive or
coercive or extortionate objective, but rather was attempting to mini-
mize its loss due to fraud. [417-419]

CIVIL ACTION commenced in the Natick Division of the
District Court Department on March 5, 1993.

On removal to the Superior Court, the case was heard by
*Isaac Borenstein,* J.

*E. Randolph Tucker* for the plaintiff.

*Robert W. Gardner, Jr.,* for the defendant.

ARMSTRONG, J. On a Friday in December, 1992, a week
before Christmas, a Mrs. Lori Baron opened an account at
Nashoba Credit Union (Nashoba) with a deposit of $100. On
Tuesday, December 22, she made a $1,000 deposit in the ac-
count, and the next morning she returned and deposited a
$50,000 check drawn on the Bank of Boston. On Monday,
December 28, Mrs. Baron obtained a cashier's check for
$30,000 from Nashoba, which was debited to her account and
made payable to her. (The check was signed and issued by a
duly authorized officer of Nashoba.) Mrs. Baron endorsed the
cashier's check in blank and gave it to her husband, who,

---

[1] As successor bank to Nashoba Credit Union. It stands in the shoes of
Nashoba and will be referred to in the opinion as if it were Nashoba.

that same afternoon, visited the plaintiff's showroom, selected a pickup truck for purchase, and gave the check to the plaintiff in payment. The truck cost $23,301 and the plaintiff gave Mr. Baron, as change, a check for $6,699 (i.e., $30,000 less 23,301). Mr. Baron drove away with the truck and cashed the check.

The following day the Bank of Boston dishonored the $50,000 check Mrs. Baron had deposited in her Nashoba account, and the check was returned to Nashoba with a report to the effect that the Barons' Bank of Boston account had been closed. When the $30,000 cashier's check was presented for payment, Nashoba, in turn, dishonored it. The plaintiff notified the police, who were instrumental in obtaining a return of the truck and cash in the amount of $3,400. The plaintiff was able to resell the truck for $22,196 net after refurbishing and sales expenses.

In its two-count complaint against Nashoba, the plaintiff sought damages for Nashoba's refusal to honor its treasurer's check (count 1) and treble damages for violation of G. L. c. 93A, § 11. After a trial without a jury, the judge found for the plaintiff on count 1, awarding $4,404 in damages resulting from the dishonor, plus interest and costs, and for Nashoba on count 2. The plaintiff appealed and argues only that the judge erred in refusing to find a violation of G. L. c. 93A, § 11.

Nashoba no longer contests that the plaintiff was entitled to the actual damages awarded for the wrongful dishonor of the cashier's check. On the trial judge's findings the plaintiff was a holder in due course, and Nashoba thus could not assert the defenses it had against the Barons. See G. L. c. 106, §§ 3-305 & 3-306; *Travi Constr. Corp.* v. *First Bristol County Natl. Bank,* 10 Mass. App. Ct. 32, 37 (1980); *Louis Falcigno Enterprises, Inc.* v. *Massachusetts Bank & Trust Co.,* 14 Mass. App. Ct. 92, 96 n.4 (1982).

The plaintiff argues that the judge erred in not concluding that Nashoba, in refusing payment on the cashier's check, violated G. L. c. 93A, §§ 2 and 11. Nashoba introduced evidence that it had withheld payment in a good-faith belief that it had a meritorious defense because the cashier's check had been procured by fraud, and that it had consulted a legal text (Brady on Bank Checks [5th ed. 1979]) and its outside counsel, coming away convinced that it had a possible defense.

At trial it tried, without great success, to show that the plaintiff should have been suspicious when Mr. Baron presented a cashier's check, not made payable to himself, in an amount substantially in excess of the purchase price of the vehicle he wished to buy. It was doubtful, however, that checking with Nashoba as a precaution would have accomplished anything, because Nashoba itself was unaware of the fraud until the following day.

The judge correctly found no violation of G. L. c. 93A. The case comes within the principle that a mere breach of a legal obligation under commercial law, without more, does not amount to an unfair or deceptive act under G. L. c. 93A. *Whitinsville Plaza, Inc.* v. *Kotseas*, 378 Mass. 85, 100-101 (1979). *Massachusetts Employers Ins. Exchange* v. *Propac-Mass, Inc.*, 420 Mass. 39, 43 (1995). *Madan* v. *Royal Indem. Co.*, 26 Mass. App. Ct. 756, 762 (1989). Nashoba, like a lamb docilely led to slaughter, can hardly be branded unethical, oppressive, or unscrupulous for attempting at the last to avoid its fate. Missing from Nashoba's resistance was any pernicious purpose collateral to minimizing its victimization at the Barons' hands. There was no ulterior motive, no coercive or extortionate objective. See *PMP Assocs., Inc.* v. *Globe Newspaper Co.*, 366 Mass. 593, 596 (1975); *Levings* v. *Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498, 502-504 (1979). Compare, on the facts, *Quaker State Oil Refining Corp.* v. *Garrity Oil Co.*, 884 F.2d 1510, 1513-1514 (1st Cir. 1989); *J.H. Westerbeke Corp.* v. *Onan Corp.*, 580 F. Supp. 1173, 1177 n.2 (D. Mass. 1984); *Atkinson* v. *Rosenthal*, 33 Mass. App. Ct. 219, 225-226 (1992). Contrast *Pepsi-Cola Metropolitan Bottling Co.* v. *Checkers, Inc.*, 754 F.2d 10, 17-19 (1st Cir. 1985); *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 472-473, 474 (1991); *Massachusetts Employers Ins. Exchange* v. *Propac-Mass, Inc.*, 420 Mass. at 42-43. Mere resistance to a just claim is not the stuff of c. 93A, except where made such by statute, G. L. c. 176D, § 3(9)(*f*), see *Thaler* v. *American Ins. Co.*, 34 Mass. App. Ct. 639, 643 (1993).

The plaintiff urges that the judgment in its favor on the contract count is a pyrrhic victory[2] and that, unless a bank that does not honor its own cashier's check is exposed to multiple damages and attorney's fees, the effect would be to

---

[2]The plaintiff seeks damages of $90,000 (the amount of the cashier's check, trebled), less $25,596 in mitigation reductions.

"undermine the commercial acceptability of cashier's and treasurer's checks." But the commercial acceptability of such checks has survived for nearly two centuries without the assistance of unfair and deceptive trade practices laws. It is quite possible that the plaintiff's attorney's fees and expenses will exceed the amount of its recovery, even with legal costs and interest, but this is true of much meritorious litigation leading to small recoveries under the American rule on litigation expenses. We are required to follow that rule in cases not governed by a contrary statute. See discussion in *Waldman* v. *American Honda Motor Co.*, 413 Mass. 320, 321-324 & n.11 (1992).

*Judgment affirmed.*