Welsh, J.
Following negotiations with a salesperson employed by Boch Mitsubishi, the plaintiff (buyer) agreed to purchase and the defendant agreed to sell a used 1998 Mitsubishi Diamante LS with approximately 25,000 miles for the sum of $18,300.00. Within two days after signing the contract, the salesman learned that the vehicle which had been the subject of the contract had been sold by another sales representative of Boch to a third party. The deposit of $1,000 that had been given was promptly returned to the plaintiff. The plaintiff was disappointed and displeased, insisting that Boch make good on the contract. Various attempts to locate a like vehicle satisfactory to the buyer were made by Boch, but no vehicle could he found that the buyer was willing to accept. After several weeks of looking for a vehicle at other dealerships, the plaintiff acquired a new 2000 Nissan Maxima at a price $8,400 more than that agreed upon for the 1998 Mitsubishi Diamante. The plaintiff sued for damages and also claimed relief under G.L.c. 93A for unfair or deceptive acts and practice.
After a 3-day trial, the judge awarded damages reckoned by trebling the $8,400, plus an attorneys fee of $11,760, plus interest, totaling $39,210.95.
The defendant appeals, contending that the judge erred in determining that the purchase of the new Nissan Maxima was reasonable “cover” as a matter of law and that there was insufficient evidence to warrant a finding that Boch was guilty of a knowing or intentional violation of G.L.c. 93A We agree with the defendant-appellant. We vacate the award of damages for cover and for knowing and intentional violation of G.L.c. 93A and remand the case for a redetermination of damages.
1. The Uniform Commercial Code’s fundamental injunction is to render such damages to the aggrieved party as to place that party in as good a position as if the other party had performed the contract See G.L.C. 106, §1-106(1). The Code provides an aggrieved buyer two alternative remedies when the seller breaches the contract by failing to deliver the goods agreed upon. The buyer may recover his economic loss calculated by the difference between the market price and the agreed contract price, sometimes called the “benefit of the bargain” rule. G.L.c. 106, §2-711. The buyer may eschew this remedy and instead “cover” by procuring substitute goods. In such a case, the damages will be the difference between the “cover” price and the contract price. Whichever option is chosen, the buyer may also recover incidental and foreseeable consequential damages occasioned by the breach. G.L.c. 106, §2-715. Perhaps to avoid a windfall, the buyer’s damage recovery is to be reduced by the expenses the buyer avoids by not having to perform. G.L.c. 106, §§2-712 (2), 2-715 (1).
*2 Calculation of “cover” damages involves three elements. First, the trier of fact should determine the aggregate difference between the cover price and the contract price. Second, the damage award should be increased by the incidental and consequential damages found. Third, the award should be reduced by the expenses avoided by the buyer because of the seller’s breach. Productora e Importadora de Papel, S.A. de C V. v. Fleming, 376 Mass. 826, 839 (1978). Although at least one appellate court has held in circumstances not unlike those in the instant case that “cover” is applicable only to transactions in a commercial context [see Bishop v. Hyundai Motor America, 44 Cal. App. 4th 750, 52 Cal. Rep. 2d 124 (1996)], the prevailing view is that “cover” is applicable to consumer transactions. Freitag v. Bill Swad Datsun, 3 Ohio App. 3d 83, 443 N.E.2d 988 (1981); G.L.c. 106, §2-712, Comment 4 (“cover” not limited to merchants: it is a vital and important remedy for the consumer buyer also). We perceive no reason to deny the remedy of “cover” to a consumer buyer.
The test of proper cover is whether at the time and place the buyer acted in good faith and in a reasonable manner, and it is immaterial that hindsight may later prove that the method of cover used was not the cheapest or most effective. G.L.c. 106, §2-712, Comment 2.
One aid for determining reasonableness in this context is the Code’s injunction: put the buyer in the position that performance would have done. The buyer has the burden to show that the goods procured are a reasonable substitute. While courts are rightly reluctant to declare a buyer’s good faith acts unreasonable, a court ought not affix its imprimatur to the transaction with a blind eye, and defer obsequiously to the buyer’s choice as to “cover.” While no exclusive test exists, a helpful guide is to pose the question how, when and where would the buyer have procured the goods had he not been covering and had no prospect of a court recovery from another. If a buyer can truthfully answer he would have spent his own money in that way with no prospect of reimbursement, the court should not demand more.
It needs to be stressed that the goods obtained as cover need not be identical with those called for in the contract so long as they are commercially usable as a reasonable substitute. The recovery for “cover” goods ought not to be denied merely because there exists a possibility of a windfall unless the seller demonstrates persuasively the likelihood of a significant windfall due to the superior quality of the cover goods. Occasionally, a windfall might occur by overcompensating a buyer due to seller’s inability to prove that buyer specifically benefited from the added quality of the cover goods. A buyer may not utilize cover to put himself in a better position than he would have been in had the contract been performed. Martella v. Woods, 715 F.2d 410, 413 (8th Cir. 1983). In Freitag v. Bill Swad Datsun, 3 Ohio App. 3d 83, 443 N.E.2d 988, the court held that the buyer’s purchase of a 1980 Datsun was not a reasonable substitute for a differently equipped 1979 Datsun. Compare: Mueller v. McGill, 870 S.W.2d 673 (Tex. App. 1994), where the court held that it was a jury question whether a 1986 Porsche Targa 911 was a reasonable substitute for a 1985 Porsche Targa 911. There was evidence that the two cars were virtually identical. We conclude that the instant case is more in line with the Bill Swad Datsun case, supra, and is distinguished from Mueller v. McGill, supra, in that the substitute goods were virtually identical and it was practically difficult if not impossible to obtain the exact year and type of Porsche. We hold that the acquisition of a new Nissan Maxima as a substitute for a used 1998 Mitsubishi Diamante is unreasonable under the circumstances of this case.
2. We are not unmindful of the principle that factual determinations of a trial judge are not to be disturbed unless found to be “clearly erroneous.” See Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 483 (1991). The burden rests with *3 the appellant to demonstrate that the finding as to the issues of reasonableness and of knowing and intentional violation of G.L.c. 93A is “clearly erroneous.” A finding of fact is “clearly erroneous” if, although there is some evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made. Springgate v. School Committee of Mattapoisett, 11 Mass. App. Ct. 304, 309-310 (1981). Of course, the credibility of witnesses is particularly within the province of the trial judge, a province which may be invaded by the reviewing court only in exceptional cases. Matsushita Electric Corp. v. Sonus Corp., 362 Mass. 246, 254 (1972).
We believe this is such a case. While the barrier is a formidable one we believe it is properly overcome in this case. See Spiegel v. Beacon Participations, Inc., 297 Mass. 398, 407-408 (1937). While a trial judge is permitted to reject all or any part of a witness’s testimony, a wholesale rejection of an unimpeached testimony may cast a pall on the findings. Disbelief of testimony does not warrant a finding that the opposite proposition is true. Kunkel v. Alger, 10 Mass. App. Ct. 76, 86 (1980). In this case, rejection by the trier of fact of the salesman’s testimony that he was unaware that the car had been sold to another person does not supply evidence otherwise lacking that this was an intentional and deliberate scheme to secure a “back up” contract should the first contract fail for any reason. While failure to respond to a demand letter under G.L.c. 93A may in some cases permit an inference of knowing and intentional misconduct [See Slaney v. Westwood Auto, Inc., 366 Mass. 688, 704 (1975)], it cannot be gainsaid that every breach of contract is automatically a violation of the Consumer Protection Act. Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 100-101 (1979). The record does not evince a pattern of misconduct indicative of the sort of unethical behavior that smacks of a 93A violation. See, for example, Howahd J. Alperin & Roland F. Chase, Consumer Law (2d Ed.), 35 M.P.S., §2:13, regarding “Bait and Switch” tactics as a violation of G.L.c. 93A. When the salesman became aware of the problem, he promptly notified the plaintiff and promptly refunded the deposit paid, not something one might expect from an unscrupulous merchant seeking to foist some other goods on a guileless consumer. He then undertook to find another vehicle that would satisfy the plaintiff as the plaintiff demanded. The fact that he was ultimately unsuccessful in “making the plaintiff happy” was unfortunate, but clearly not a violation of the plaintiff’s rights as a consumer. In fact, the plaintiff’s own testimony tended to corroborate the claim that a vehicle closely approximating the one that he agreed to purchase was hard to find.
There are a number of cases in which the appellate courts of this Commonwealth have intervened and declared various courses of conduct in a commercial context as being unreasonable as a matter of law. See Govoni Sons Construction Co., Inc. v. Mechanics Bank, 51 Mass. App. Ct. 35, 45-46 (1991), and cases cited. A judge’s conclusion as to reasonableness or unreasonableness will be subject to close appellate scrutiny if such conclusion is unsupported by his subsidiary findings. Young v. Commissioner of Public Safety, 13 Mass. App. Ct. 245, 248-249 (1982). The same may be said of the judge’s finding of a knowing or intentional violation of G.L.c. 93A. The judge apparently rejected the plaintiff’s theory that Boch used the contract with the plaintiff as a “back up” deal, should the other contract fail. The implication that the failure of the contract was the product of negligence tends to undermine any conclusion of a knowing or intentional course of conduct which was a necessary predicate to an award of multiple damages. The trial judge faults the defendant for not having done more to satisfy the plaintiff. It is observed that such failure necessarily occurred after foe contract had failed. Our indulgent reading of the record does not support the conclusion of a knowing or intentional violation of G.L.c. 93A.
*4 3. The propriety of the award of counsel fees depends upon whether the evidence warrants a finding of a violation of G.L.c. 93A The trial judge might well have concluded that a sophisticated operation such as Boch Mitsubishi ought to have done more to insure that such lapses as occurred here would not occur by better inventory control or the like. While it is not clear that the judge relied upon such a theory, we are not prepared to say on this record that a finding of a violation was not permissible. We therefore leave undisturbed so much of his decision as finds a violation of 93A. Since the award of counsel fees is not readily allocable because of the close factual relationship to the breach of contract count, no separate assessment is required. We see no reason to disturb the award of attorney fees.[1]
We vacate so much of the judge’s finding as awards multiple damages under G.L.c. 93A cover damages under G.L.c. 106, §2-712, and remand the case for a redetermination on the issue of contract damages under G.L.c. 106, §2-711 and any incidental or consequential damages under G.L.c. 106, §2-715.
So ordered.

 Where claims represent various elements of damage arising from a single chain of events, the attorneys fees need not be apportioned between the 93A claim and the contract claim. Drywall Systems, Inc. v. ZVI Construction Co., Inc., 435 Mass. 664, 673 (2002).