Williams, P.J.
Following a bench trial, the judge found that defendant Scott Hyman, d/b/a XXX-treme Cycles (“Hyman”), breached his motorcycle sales contract with plaintiff Peter B. Day (“Day”) and violated the Consumer Protection Act, G.L.c. 93A. Hyman claims on this appeal that the judge erred in finding that Hyman had revoked his offer to sell the motorcycle to Day and, even if Hyman had breached the contract, that such breach constituted a violation of G.L.c. 93A. We find no error, and affirm the judgment.
The trial court found the following. On March 8, 2004, Day agreed to buy from Hyman’s shop in Middleboro a specially ordered 2003 Big Dog Mastiff motorcycle for $23,700.00. The sales contract stated that “[fjinal Settlement of [the] bill Must Be In Cash or Certified Check” and that “[t]itle will not pass to purchaser until payment in full has been made. If final payment is made by check, title will not pass until check is paid.” The contract, which set no performance date, provided for liquidated damages in the amount of $500.00 to cure any breach by Day. Day paid a $10,000.00 deposit with a personal check. When the check cleared, Hyman ordered the motorcycle, and later called Day when it arrived.
Day then “offered to pay” Hyman the balance of the purchase price with a cashier’s check. Hyman refused such a check, and doggedly demanded cash or a wire transfer of funds. Day declined to use either of those modes of payment. On March 22, 2004, Hyman verbally revoked his offer to sell the motorcycle to Day “under any terms.”[2] Day then requested the return of his deposit. Hyman refused, claiming he was entitled to retain $500.00 as liquidated damages. On March 30, 2004, Day’s counsel sent Hyman a G.L.c. 93A demand letter seeking both the return of Day’s deposit and payment of $600.00 in legal fees. Hyman did not respond in writing within 30 days, but later “tendered” a check of $9,500.00 conditioned on Day’s release of Hyman from all liability. Day rejected that offer.
*60 Based on those factual findings, the trial court ruled that Hyman had unilaterally rescinded the sales contract, that Day had then been immediately entitled to his deposit, that Day had been further damaged in the amount of $500.00, and that Hyman’s conduct was unfair and deceptive in violation of G.L.c. 93A, entitling Day to treble damages and attorney’s fees. The court assessed damages in the amount of $11,500.00, plus attorney’s fees of $2,920.00, and judgment was entered for Day in the total amount, including attorney’s fees, of $23,532.38.
As noted, Hyman now contests the trial judge’s factual findings that Hyman terminated the sales contract by verbally revoking his offer to sell and that such contract breach was unfair and deceptive. We review the court’s findings to determine whether they reflect clear error, which would emerge if there was no evidence to support the findings, or if we were left, upon review of all the evidence, with the definite and firm conviction that a mistake had been committed. Mass. R. Civ. P., Rule 52(c). See, e.g., Mason v. Coleman, 442 Mass. 177, 186 (2006); Rodriguez v. Winiker, 2004 Mass. App. Div. 191,192.
1. Hyman argues that the court erred in finding that he had “refused to accept” Day’s cashier’s check because Day, by his own admission, never tendered a check to Hyman.[3] See Metropolitan Credit Union v. Matthes, 46 Mass. App. Ct. 326, 333 (1999) (valid tender occurs when payor actually produces and offers money to payee; “mere offer to pay” is insufficient). Given evidence that Hyman told Day he would not sell him the motorcycle “under any terms,” however, the trial court could have found that Hyman had unequivocally renounced the contract and that Day’s later tender of payment was, thus, excused. See G.L.C. 106, §2-511(1) (“Unless otherwise agreed tender of payment is a condition to the seller’s duty to tender and complete any delivery.”); Samuels v. Brooks, 25 Mass. App. Ct. 421, 427 (1988) (buyer, who without proper basis refuses to tender purchase price at agreed time, breaches sales agreement). Neither the trial judge’s acceptance of Day’s view of events and his rejection of Hyman’s, nor the fact that this Division might have made different findings on the trial evidence, renders the judge’s decision clearly erroneous. Buster v. George W. Moore, Inc., 438 Mass. 635, 642-643 (2003).
2. Turning to Day’s G.Lc. 93A claim, Hyman argues that even if he breached the contract, such breach of a legal obligation under commercial law cannot, standing alone, amount to an actionable unfair and deceptive act See, e.g., Framingham Auto Sales, Inc., supra, at 418; Cetkovic v. Boch, Inc., 2003 Mass. App. Div. 1, 3. However, conduct in known disregard of contractual arrangements and intended to secure benefits for the breaching party may constitute a violation of G.L.c. 93A See Clamp-All Corp. v. Foresta, 53 Mass. App. Ct. 795, 812 (2002), citing Wang Labs., Inc. v. Business Incentives, Inc., 398 Mass. 854, 857 (1986). Although, again, this Division might have reached a different conclusion, the trial court was within its discretion in finding that Hyman’s unilateral breach of the contract constituted an unfair and deceptive act in the particular circumstances of this case. Those circumstances included Hyman’s intransigent insistence on a cash or wire-transfer payment when the latter mode of payment was not even mentioned in the contract and when Day was prepared to *61 pay by cashier’s check,[4] and Hyman’s late and flawed response to Day’s G.L.c. 93A demand letter.[5] Although the boundaries of what conduct might qualify for consideration as a violation of G.L.c. 93A is a question of law, whether particular conduct in its factual setting is unfair or deceptive is a question of fact. McDowell v. von Thaden, 2006 Mass. App. Div. 148, 150, citing Lily Transp. Corp. v. Royal Institutional Servs., Inc., 64 Mass. App. Ct. 179, 209 n.16 (2005). We cannot say either that the trial judge erred as a *62 matter of law in concluding that Hyman’s conduct fell within the boundaries of consideration of a G.Lc. 93A violation, or that he clearly erred in concluding that that conduct was unfair or deceptive in the circumstances presented here.
Day’s counsel seeks appellate attorney’s fees, see Fabre v. Walton, 441 Mass. 9, 10 (2004), in addition to the G.L.c. 93Afees assessed by the trial judge. Our awarding such fees is discretionary. Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 432 (2005). But see DeRoche v. Massachusetts Comm’n Against Discrimination, 447 Mass. 1, 17 (2006). We decline to award them.
Judgment affirmed.
So ordered.

 There was evidence to the effect that, when Day suggested that he would give Hyman a cashier’s check when he arrived to collect the motorcycle, Hyman told Day he would not accept a cashier’s check. He told Day he wanted a wire-transfer of the money to him before Day arrived. Hyman continued to press for a wire transfer, and Day continued to try to convince Hyman of the soundness of a cashier’s check until, finally, Hyman told Day that Day had insulted him and that he would not sell the motorcycle to Day. Later, he told Day that he would not return his deposit.

 Although Hyman now argues that Day’s own testimony proved he never appeared at Hyman’s shop after his first visit, Hyman himself testified that Day, in fact, did arrive on the Saturday they had discussed with a trailer to collect the motorcycle and that Day had then “presented a cashier’s check or certified check” to Hyman. The trial judge’s decision did not include any specific finding as to whether Day actually presented a check or any other form of payment.

 While the contract called for a certified check or cash, the Uniform Commercial Code’s definition of “check” encompasses a “cashier’s check.” G.L.c. 106, §3-104 (f) (ii). The protections afforded a payor by both a certified check and a cashier’s check are similar. See G.Lc. 106, §§3-409(a) and (d) (certified check) and 3404(g) (cashier’s check). The purpose of requiring payment by certified check is to ensure that funds are set aside by the bank certifying the check. Those funds are, thus, immediately available to the drawer. The same function is fulfilled by a cashier’s check. The drawer cannot refuse to honor either kind of check. See, e.g., 1 H.J. Bailey & R.B. Hagedorn, Brady on Bank Checks §10.01, at 104 (rev. ed. 2006). If a bank did refuse payment, the payee could seek damages from the bank, but not from the drawer. G.L.c. 106, §§3-411, 3-414(c); see Framingham Auto Sales, Inc. v. Workers’ Credit Union, 41 Mass. App. Ct. 416, 417 (1996). It may be inferred that Hyman insisted in his contract on cash or a certified check because of such protection. Since a cashier’s check would have provided him similar protection, the intent of the contract would have been satisfied by either form of check. As has been noted by the Appeals Court, “the commercial acceptability of [cashier’s] checks has survived for nearly two centuries....” Id. at 419.

 While failure to respond to a demand letter is not a per se violation of G.Lc. 93A, Cetkovic, supra at 3, it might support an award of multiple damages if a refusal to grant relief on demand was made in bad faith or with reason to know that the alleged underlying unfair practice violated the statute. See, e.g., Dorgan v. Loukas, 19 Mass. App. Ct. 959, 960 (1985). The statute contemplates a written response to a demand letter within 30 days of its mailing or delivery. Hyman testified that he spoke to Day’s counsel soon after receiving the demand letter. Even if a verbal response to a G.Lc. 93A demand letter sufficed as to form, the response would still have to present a “reasonable settlement offer” in order for the recipient to control the sender’s potential recovery. It was Hyman’s burden to prove his response was reasonable in light of the demand for relief. Bobick v. United States Fid. & Guar. Co., 439 Mass. 652, 661 (2003). See Kohl v. Silver Lake Motors, Inc., 369 Mass. 795, 799 (1976). Whether a response is reasonable is a question of fact. Parker v. D’Avolio, 40 Mass. App. Ct. 394, 395 (1996); Squeri v. McCarrick, 32 Mass. App. Ct. 203, 208 (1992). Hyman testified that he “just explained what went on” to Day’s counsel. Such evidence was insufficient for a fact finder to conclude that Hyman either made a reasonable settlement offer, or articulated why he felt no such offer was justified. See, e.g., Leardi v. Brown, 394 Mass. 151, 166 (1985), citing Patty v. Harmony Homes, Inc., 10 Mass. App. Ct. 1, 6 (1980).
Hyman’s eventual written response, some eleven days late, came in the form of his proffered check for $9,500.00; i.e., the amount of the deposit less $500.00 in liquidated damages. Hyman had no right to retain that amount since it was he, not Day, who breached tire contract. Hyman’s offer seemed to acknowledge that he had wrongly withheld the deposit, but asserted, paradoxically, the he was still entitled to liquidated damages. A further suggestion of Hyman’s awareness that his retention of Day’s deposit was improper might be found in tire release language Hyman added to tire $9,500.00 check, which could be construed as an attempt to coerce Day to relinquish his rights to seek full recompense. See Anthony’s Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 474 (1991).