Fremont-Smith, Thayer, J.
Based on all of the credible evidence, the Court finds and rules as follows.
In this case, the plaintiff Killian Corp. (“Killian”) sued defendants to recover the unpaid balance ($27,000) of what was owed to plaintiff under a contract for $127,000 to remodel defendants’ home, and defendants (“Murphy”) counter-claimed for plaintiffs alleged failure to perform the contract in a workmanlike manner and within a reasonable time period, the delay allegedly resulting in rain damage to the home and its contents.[1] The jury returned a verdict of $20,000 against the defendants on Killian’s claim, and of a verdict of $10,648 on defendants’ counterclaim against the plaintiff.
The Court reserved to itself the determination whether Killian violated the terms of G.L.c. 142A (the Home Improvement Act), whether the alleged, violations of G.L.c. 142A constituted a violation of c. 93A, and whether Killian otherwise violated c. 93A by additional acts and/or omissions that constituted unfair and deceptive practices.
On July 1, 2005, Murphy signed his acceptance of Killian’s “Proposal” for the construction work, which thereby became the controlling contract, which, by its terms, incorporated the architectural specifications and drawings contained in Murphy’s previous contract with his architect.
*322 The contract provided that Killian was
To remove existing second floor bedroom area complete to weather proof same while under construction.
To construct as per drawing new second floor and attic space.
Changes are:
Remove Master Bed Room Deck and French doors and replace with two windows matching rest of house as per drawings.
Total Price: $150,000.[2]
We propose hereby to furnish labor and material— complete in accordance with above specifications, for the sum of $150,000. Payments to be made as follows: One third upon commencement, one third at frame inspection and balance upon completion.
All material is guaranteed to be as specified. All work to be completed in a substantial workmanlike manner according to the specifications submitted, per standard practices. Any alteration or deviation from the above specifications involving extra costs will be executed only upon written orders, and will become an extra charge over and above the estimate. All agreements contingent upon strikes accidents or delays beyond our control. Owner to carry fire, tornado and other insurance. Our workers are fully covered by Workmen’s Compensation and Property Damage Insurance.
ACCEPTANCE. The above prices, specifications and conditions are satisfactory and hereby accepted. You are authorized to do the work as specified. Payment will be made as outlined above. This Agreement between the parties may only be changed or amended by a written instrument of subsequent date signed by the parties thereto.
The scope of the work on the Project, as stated in the architect’s specifications which were incorporated into the contract, was to include “[r]empv[ing] roof and exterior walls to second floor deck as shown on plans . . . Construct new stair to new attic as shown on plans.” The architect’s specifications, incorporated into the contract, further specified:
Division 1 — General Requirements
All work to conform to Massachusetts State Building Code and all applicable local laws and regulations.
Contractor to verify all dimensions and details and report all errors and/or discrepancies to architect prior to the start of construction.
Contractor to complete all work indicated in the drawings and specifications, details not shown to be completed in accordance with accepted practices.
All work to be done in a good and workmanlike manner and completed in a timely fashion . . .
All work to be guaranteed to be free of substantial defects for a period of one year after completion .. .
Division 8 — Doors and Windows
Interior doors — 6 panel pine, solid jamb
Division 10 — Specialties
Bathroom — install towel bars, medicine cabinets, paper holders, etc. furnished by owner.
Division 15 — Plumbing and HVAC
Install fixtures and fittings furnished by owner . . .
HVAC — Design/build installation. Evaluate existing systems. Provide heating and cooling to new spaces. Install new and relocate ductwork and registers as required.
The Court finds that the contract did not comply with the specific requirements of c. 142A in several respects, which are discussed below. Although Chapter 142A(17) provides that a violation of this chapter constitutes a violation of Chapter 93A, courts have generally found violations of Chapter 142A sufficient to support a Chapter 93A claim for unfair or deceptive trade practices only when a contractor has also violated a statute or ordinance independent from Chapter 142A. Harrison Construction, LLC v. Cirurgiao, No. 2006-880-C, 23 Mass. L. Rptr. 272, 2007 Mass.Super. LEXIS 582, at * 8-9, n.5 (Mass.Super.Ct., Oct. 22, 2007) (where court concluded, in allowing summary judgment, that the defendant homeowner had failed to allege anything more than de minimus deficiencies in the contract arising from violations of Chapter 142A, §2).
The Court finds that, to the extent that the Contract here did not include certain ministerial information required by c. 142A, §2(8), such omission was similarly de minimus. For example, omitting a statement that all contractors and subcontractors must be registered by the administrator and that any inquiries about a contractor or subcontractor relating to a registration should be directed to the administrator; omitting the registration number of the contractor or subcontractor; omitting a reference to an owner’s three-day right of cancellation, a reference to c. 142A or a statement that Murphy should not sign the Contract if there were any blank spaces, were all insubstantial omissions which were inconsequential here.
At trial, there was no credible evidence that Killian violated any other statute or ordinance in performing the Project. Indeed, Edward Fredericks, the Plumbing Inspector for the City of Waltham, was the only City official to perform a final inspection of the Project, and testified that Killian’s work was performed in a workmanlike manner and in compliance with the Plumbing Code. I do not credit the testimony of Peter Mortali, a former plumbing salesman who had sold the Murphys *323 their bathroom fixtures in or about 2004, that he believed Killian’s work and its subcontractor’s work did not comply with the Plumbing Code or the jacuzzi’s and the Grohe shower manufacturer’s instructions, as he lacked competence to render such an opinion and also indicated bias by accusing Killian of character assassination.
While Killian did violate G.L.c. 142A, §2(a)(3) by failing to include in the contract “the date on which the work under the contract is scheduled to begin and the date on which said work is scheduled to be substantially completed,” G.L.c. 142A, §2(a)(3), the contract did specify, as noted above, that all work would be “completed in a timely fashion.” I find that Killian at the outset notified Murphy that his framing crews were all occupied on other job sites, so that Murphy knew, when he contracted with Killian, that Killian was unable to specify exactly when the job could be commenced or when it could be completed. While Killian’s principal, Page admitted that he had orally estimated the job would take three months after the building permit had been procured, which occurred in July, and that the work actually took eight months to complete, I credit his explanation that it was completed as soon as possible in view of the unavailability of the framing crew and bad weather. Although the juiy awarded damages for breach of contract, which may have included delay damages, I find that Page’s original estimate was not intended to deceive Murphy, but was in good faith. Moreover, Page took all reasonable steps he could to mitigate the water damage when a late autumn storm occurred.[3]
Thus, the Court finds that, while the contract may have failed to comply, in some technical aspects, with the requirements of c. 142A, there were no material violations in the circumstances. The specifications incorporated in the contract did not require plaintiff, as Murphy contended, to pay for replacement of the heating and plumbing to accommodate defendant’s super-sized jacuzzi, but only to “evaluate existing systems” as to their adequacy. I credit Page’s testimony that Murphy understood that, if it were determined that a new boiler or water heater were needed, Killian would provide a separate proposal for such work. Nor did the contract require that Killian provide, as Murphy contended, an additional support beam for the jacuzzi.[4] Most of the complained-of deficiencies in the work, moreover, were intended by Killian to be remedied after a punch list was compiled, but Murphy fired Killian from the job in March 2006, before the punch list work could be accomplished, and refused to pay the remaining $27,000 owed under the contract.[5]
Other than the de minimus technical violations of c. 142A discussed above, the Court does not find, and denies, the Murphys’ “requests for findings of fact” and “requests for rulings of law.”
Moreover, “Massachusetts courts have repeatedly held that a technical violation of similar statutes does not automatically constitute a violation of c. 93A. Rather, the particular circumstances of the case in question are to be considered . . . Moreover, for a violation of c. 93A to be established, it must be proved that plaintiffs’ violation of c. 142A was a proximate cause of injury to [the homeowner]. J.T. Haffey Builders, Inc. v. Carey, 2010 WL 2431927, at *1 [27 Mass. L. Rptr. 48].
There was no evidence that any purported noncompliance by Killian with Chapter 142A, as opposed to any breach of contract by unworkman-like construction or by unreasonable delay, harmed the Murphys in any way; much less did the Murphys offer evidence that they would have acted differently if the Contract had met each and every requirement of the Act.[6] As the Murphys “have failed to demonstrate how they have suffered any loss by [Killian’s] alleged noncompliance with the statute,” their claim fails. Samaha Corp. v. El-Hayek, 2007 WL 2367599, at *2 n.7.
As for defendants’ alleged “stand alone” c. 93A violation (Count II), the Court does not credit defendant’s testimony that Killian, through its principal officer, Page, committed an unfair or deceptive act by having Murphy execute the “Proposal” at the office of the Waltham Building Department, or shortly before that same day, under the pretext that said document was only necessary as part of the paperwork for obtaining the desired building permit and had no other significance, so that Murphy believed he didn’t need to even read it before signing it. I find that Murphy did know the contents and significance of the document and signed it freely and knowingly.
It is well settled that “the mere breach of a contract, without more, does not amount to a c. 93A violation.” Madan v. Royal Indem. Co., 26 Mass.App.Ct. 756, 762 (1989) (citing Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 100-01 (1979)). “[T]o show a violation of c. 93A, the plaintiff must show ‘unfair or deceptive acts or practices,’ other than the breach.” Id. at 763 (emphasis added). Thus, a plaintiff must also allege that the defendant acted with “a pernicious purpose” and a c. 93A claim stemming from a breach of contract will fail if “[t]here was no ulterior motive, no coercive or extortionate objective.” Framingham Auto Sales, Inc. v. Workers’ Credit Union, 41 Mass.App.Ct. 416, 418 (1996).
While the jury did find that Killian breached some aspects of the parties’ contract causing the defendant $10,648 in damages, a breach of contract is insufficient as a matter of law to establish liability under c. 93A. At best, “[t]his [is] an ordinary contract dispute!.]” Kobayashi v. Orion Ventures, Inc., 42 Mass.App.Ct. 492, 505 (1997). There is no evidence of any “conduct that was unethical, immoral, oppressive, or unscrupulous.” Id. (finding mere breach of lease insufficient to establish 93A violation); accord, Madan, 26 *324 Mass.App.Ct. At 762-63 (rejecting 93A claim resting upon breach of lease); Gopen v. Am. Supply Co., Inc., 10 Mass.App.Ct. 342, 348 (1980) (holding tenant’s vacating premises, allegedly in breach of a lease, was not enough to trigger c. 93A liability); Dowse, Inc. v. Brockunier, No. 9129, 1992 Mass.App.Div. 44, 1992 WL 64767, at *3 & n.1 (Mass.App.Div. Mar. 20, 1992) (no c. 93A violation despite a finding that defendant had breached lease).
Thus, the Murphys’ “allegations are not sufficient to support a claim under c. 93A,” and the Court will order dismissal of the count in question." Whitinsville Plaza, Inc., supra, 378 Mass. at 100-01 (affirming dismissal of Chapter 93A claim premised on breach of contract).

ORDER

Accordingly, counterclaim counts I and II for violation of c. 93A are DISMISSED, the defendants’ motion for attorney fees and costs is DENIED, and FINAL JUDGMENT shall be entered for each party in accordance with the jury verdict.

 Murphy had been reimbursed by his insurance company for the rain damage to his home. By his counterclaim, he sought recovery of $38,000 to remedy alleged defects in Killian’s work, for which the jury awarded $16,698, and an additional $15,600 for water damage to the contents of his home, for which the jury awarded zero damages.

 The parties subsequently orally agreed to lower the price to $127,000.

 Murphy was reimbursed for the home’s structural damage by his insurance company.

 The contract required Killian to “complete all work in accordance to the specifications submitted,” p. 2, supra, but the drawings and specifications did not provide for any support beam for the jacuzzi.

 No allegation has been made, so the Court will not decide, whether Murphy’s conduct in this regard violated c. 93A.

 As noted, Murphy contends that the failure to specify a completion date resulted in the roof not being replaced until after a later autumn rainstorm damaged his home and contents in October. But as also noted, Page explained to Murphy that his framing crews would not be available for some time, and Murphy nevertheless agreed to approve Killian’s Proposal. I do not credit Murphy’s testimony that he would not have entered into the contract had Killian initially estimated a later completion date, even had such an extended estimate been feasible in the circumstances.